**Alva LONG, Plaintiff,**

**v.**

**Elliott L. RICHARDSON, Secretary of Health, Education & Welfare, Defendant.**

**Civ. A. No. 70–C–11–A.**

United States District Court, W. D. Virginia, Abingdon Division.

Nov. 19, 1971.

**306**

Emory H. Crockett, Glen M. Williams, Jonesville, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, Chief Judge.

Claimant, Alva Long, has appealed to this court from an adverse decision by the Secretary of Health, Education, and Welfare denying disability benefits. The decision by the Appeals Counsel was rendered December 15, 1969, making final the hearing examiner's decision dated October 8, 1969. A previous appeal by Mr. Long to this court resulted in an affirmance of the Secretary's decision denying disability insurance benefits. Long v. Cohen, D.C., 293 F.Supp. 370 (1968).

Although the record was held open at the instance of the claimant in order for him to submit a report by a local or his family physician, none was filed.

The claimant has pending a motion to remand on the ground that the evidence needs to be developed as to the nature and type of work of a berry-picker. Both parties have filed motions for summary judgment.

Section 205(g) of the Act, 42 U.S.C. 405(g), provides that in order for remand to be granted, plaintiff must show "good cause." Bohms v. Gardner, 381 F.2d 283 (8th Cir. 1967), cert. den. 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968). Plaintiff must show to the court at least the general nature of the new evidence he wishes to introduce into the record, or the evidence itself. Hallard v. Flemming, 167 F.Supp. 205 (W.D.Ark.1958), and he must also show that such evidence is required to be made a part of the record in order to develop the facts necessary to determine the cause. Angell v. Flemming, 291 F. 2d 72 (4th Cir. 1961).

Claimant was represented by counsel at his July 2, 1969 hearing before the Social Security Hearing Examiner. At that time, his attorney agreed to Exhibits B-1 through B-45 being made a part of the record. Exhibit B-31 was a transcript of a hearing held at Middlesboro, Kentucky on April 27, 1967. Seven pages of the transcript is devoted to the testimony of Dr. Charles F. Elton, a vocational expert. Dr. Elton's testimony was as follows:

"Examiner: You've been present throughout the proceedings here today and have listened to the claimant's testimony in this case, have you not?

Dr. Elton: I have.

Examiner: Do you have an opinion as to whether he could return to that—to those types of work?

Dr. Elton: I do not believe that Mr. Long could return to the work in the coal mines. I do believe Mr. Long could do the type of job that he was last employed in on the berry farm in Oregon. I note in the—that this was a full time job, that during the busy part of the season he supervised a couple of hundred individuals and during the non-busy seasons there were 8 or 10 individuals that he supervised, mainly engaged in pruning activities, that type of work. Yes, I believe he can do that."

The claimant had previously testified in the same hearing as follows:

"Q. Went to work as a farm laborer, did you?

A. Farm laborer.

Q. Did you work for someone else or yourself?

A. Yeah, in Portland, Oregon.

Q. Went out in Portland, Oregon and started working on the farm. What sort of farm work was it?

A. I's just able to walk around and take care of children. Had a bunch of school children, put me over them. Walk around and see to them.

Q. Did you work in the crops?

A. Naw, not to amount to nothing. Wadn't able to do nothing.

Q. What kind of crops did they raise out there?

A. Just berries.

Q. Berries?

A. Strawberries and raspberries.

Q. And one of your duties was to tend the children, is that right?

A. Yeah.

Q. And the work crew?

A. Yeah, about 300 school children.

Q. You worked every quarter during the year, didn't you, steady job?

A. Yeah. Worked practically all the time.

Q. Now just what were your duties on this job out in Oregon?

A. Do what?

Q. What were you supposed to do every day?

A. I's just supposed to take care of the children, maybe see how long they work and everything, picking berries, and see that they pick all the berries and things like that.

Q. You kind of supervised the young group and stayed behind them and saw that they worked and what they did, is that right?

A. That's what they put me on for to take care of the children.

Q. You had nothing to do with paying them or taking care of the——seeing how much they picked or anything of that nature?

A. No, they just picked them and carried them in and they paid them off.

Q. Who loaded the berries and carried them off? Did you do any of that?

A. No, I couldn't load them. I stayed there 10 years and I didn't load no berries or nothing."

The evidence in the record thus indicates the nature of the work which claimant performed in the berry fields of Oregon. A remand to develop that evidence would be without value. In addition, claimant does not show the nature of the new evidence he seeks to introduce.

The question of plaintiff's disability prior to the Appeals Council's decision of January 12, 1968, affirmed by the court decision of September 19, 1968 is *res judicata* and will not be considered a second time.

The doctrine of *res judicata* has been frequently applied by the courts in matters arising out of Title II of the Social Security Act where there has been a previous determination or decision by the Secretary concerning an application for benefits under the Act with respect to the rights of the same party on the same issue or issues which has become a final judgment either by judicial affirmation or by failure of the claimant to request judicial review. Leviner v. Richardson, 443 F.2d 1338 (4th Cir. 1971); Hughes v. Finch, 432 F.2d 93 (4th Cir. 1970); Easley v. Finch, 431 F.2d 1351 (4th Cir.

1970). There can be no doubt that it is essential that this be the result in cases such as this. Otherwise, the administrative process could go on *ad infinitum* and the provisions of the Act in § 205(g) calling for appeal to the Secretary's decision under certain specified conditions would be nullified.

As stated in Moore v. Celebrezze, 252 F.Supp. 593 (E.D.Pa.1966), aff'd. 376 F.2d 850 (3rd Cir. 1967):

" * * * the plaintiff may not simply relitigate the same issues that were presented on the first application or else there would be no end to litigation before the administrative boards and the courts. To allow a claimant to file repeated applications based on the same accident but only for different time periods without any material medical change during those periods is certainly violating all principles of finality as set forth in the Social Security Act and accompanying regulations.

" *    *    *    *    *    *

" * * * The claimant has no new facts and has not demonstrated that the issues presented here are different in any significant way from the ones initially adjudicated. * * * "

From the period of the prior decision by the Appeals Council, January 12, 1968, to its decision in the January 27, 1968 application, the Appeals Council found that no new evidence sufficient to warrant a reopening and revision of the previous determination had been submitted, and that the evidence failed to establish that the plaintiff had any impairment or combination of impairments that would prevent him from engaging in substantial gainful activity such as his former work as a supervisor on a berry farm or similar type of work.

The record shows that in 1955 the plaintiff sustained a left shoulder joint separation as a result of a mine accident. This condition improved with treatment, and reports of physical examinations thereafter show no severe residual impairment. The plaintiff was able to work thereafter as a supervisor on a berry farm for ten years. In June 1966, he sustained fractures of the ribs and pelvis bone following a motor vehicle accident. His recovery from these injuries was good, with no severe complications. The plaintiff also has a duodenal ulcer, but this condition appears to be adequately controlled and has not caused marked malnutrition or weakness. While he has a lung impairment with reduced breathing capacity, pulmonary function studies demonstrated sufficient residual lung reserve to permit him to engage in light activity. The claimant has also complained of pain, which is a subjective symptom and difficult to evaluate. This does not appear to be severe since the plaintiff stated that he uses no medication to minimize this symptom.

Dr. C. L. Kirkpatrick examined the claimant at the request of the State agency on November 22, 1968, when his chief complaint was pain in the right hip and leg. Dr. Kirkpatrick found the claimant well-developed, well-nourished and walking with a slight limp. There was some resistance in raising the right upper extremity above the shoulder. Straight leg raising was restricted about 10% on the right with no pain. There was very slight restriction on lateral flexing to the right. The claimant had slight atrophy of the left thenar eminence. While he had a glove type paresthesia of the left hand and on a two inch strip of the entire left lower extremity extending from the hip to the toes, he walked on toes and heels without pain or loss of balance. Pulmonary function studies after bronchodilators disclosed a maximum breathing capacity of 66% of the plaintiff's predicted normal. The main diagnoses were: (1) ulcer, duodenal, chronic, questionable activity, class IA; (2) slight separation of the acromioclavicular joint, class IA; (3) arthritis, chronic, osteo, old, hip, left, class IIA–B; (4) bronchitis, mild with emphysema, class IIB. The physician commented

that the plaintiff was not taking any medication.

Dr. William F. Schmidt, an internist, examined the claimant in August, 1969 at the request of the government. He noted that the claimant's gait was unstable and slow. Breath sounds were very distant and there were no wheezes. His left shoulder abducted to 80 degrees with complaint of pain and stiffness. On his left forearm there was atrophy of the hypothenar (palm) muscles. He was able to make a fist with poor strength. The remainder of the joints showed full range of motion. Pulmonary function studies revealed a vital capacity of 88% and a maximum breathing capacity of about 55% of his predicted normal. The main diagnoses were: (1) chronic bronchitis, with bronchospasm; (2) traumatic injury of the left forearm and hand; (3) traumatic arthritis of the larger joints. Dr. Schmidt commented that the plaintiff's peptic ulcer seemed to be under adequate therapy although he was not following any rigid diet. He also noted that the plaintiff's weight had been steady, varying no more than about two pounds in the past six years. The claimant indicated that he could walk about two blocks and lift about twenty pounds. The physician stated that the residual injuries to the claimant's hand reduced the amount of lifting, pushing and pulling he could do. He further stated "Coloring the entire picture is the fact that this gentleman does not wish to perform any exertional activity (this observer's opinion)," and "Respiratory wise, I feel that his spirogram would suggest that he could do less than moderate activity."

The evidence submitted with his current application disclosed essentially the same findings as shown in the prior records. Although it is noted that the claimant has a hand impairment, this condition does not interfere with his duties as a farm supervisor. Dr. Schmidt felt that he could do less than moderately strenuous activities, and that this would not preclude the type of work he had done on a farm.

■ To the extent that the evidence is in conflict, it was incumbent upon the Secretary to resolve the differences. This he has done and substantial evidence supports his conclusion that the claimant is not disabled to such an extent as to entitle him to Social Security benefits.

The evidence supports the Secretary's finding that the impairments claimed to be disabling by the claimant were not sufficiently severe to preclude his engaging in any substantial gainful activity. Henry v. Gardner, 381 F.2d 191 (6th Cir. 1967), cert. den. 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 (1967), rehearing denied 389 U.S. 1060, 88 S. Ct. 797, 19 L.Ed.2d 864 (1968).

The decision of the Secretary that the claimant had no impairments of sufficient severity to prevent him from engaging in substantial gainful activity such as his former work as a supervisor on a berry farm or similar type of work is supported by substantial evidence and is affirmed.

■■ Claimant does not suffer from any physical or mental impairment which has rendered him unable to engage in substantial gainful activity as defined by the statute and applicable regulations. As shown by the evidence, jobs such as farm supervisor, which are both gainful and substantial, remain within claimant's residual capacity. When a Social Security disability applicant has the ability to engage in substantial gainful work which exists in the national economy, either in claimant's region or in several regions of the country, he is not entitled to Social Security benefits. Davis v. Gardner, 395 F.2d 681 (6th Cir. 1968).

An order is this day entered consistent with this opinion.