Patrick J. VALENTI

v.

**SECRETARY OF HEALTH, EDUCA-TION AND WELFARE.**

Civ. A. No. 71–1576.

United States District Court,
E. D. Pennsylvania.

Nov. 22, 1972.

**1028**

---

Anthony J. Mazullo, Jr., Doylestown, Pa., for plaintiff.

Robert N. deLuca, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

██ This is a suit under § 205(g) of the Social Security Act, 42 U.S.C. § 405 (g), to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff, Patrick J. Valenti, disability benefits. The decision of the hearing examiner became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review. The defendant has filed a motion for summary judgment. The only issue before this court is whether the Secretary's findings are supported by substantial evidence, for if they are, the findings are conclusive. 42 U.S.C. § 405(g); Palmer v. Celebrezze, 334 F.2d 306 (3d Cir. 1964).

"Substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting from Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). " '[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Upon a thorough examination of the entire record in this matter [Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968)], I conclude that the Secretary's determination is based on substantial evidence. Accordingly, defendant's motion for summary judgment will be granted.

██ Plaintiff has the burden of establishing that he was disabled, within the meaning of the Social Security Act, 42 U.S.C. §§ 416(i)(1), 423(d)(1),[1] as of June 30, 1969.[2] See Mark v. Celebrezze, 348 F.2d 289 (9th Cir. 1965). In order to establish a disability, a claimant must show that he has a medically determinable physical or mental impairment and that the impairment actually renders him unable to engage in any substantial gainful employment. Hedge v. Richardson, 458 F.2d 1065 (10th Cir. 1972); Laws v. Celebrezze, supra; Stancavage v. Celebrezze, 323 F.2d 373 (3d Cir. 1963); Esposito v. Secretary of Health, Education and Welfare, 306 F. Supp. 1212 (E.D.Pa.1969). In determining whether a person is able to engage in any substantial gainful employment, there are four elements of proof which the Secretary must consider: (1) objective medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) claimant's age, educational background, and work history.

---

1. 42 U.S.C. § 416(i)(1) reads, in pertinent part:

    "[T]he term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . . ."

    42 U.S.C. § 423(d)(1) merely reiterates the same definition.

2. Plaintiff must establish that he became "disabled" prior to the expiration of his insured status. Domozik v. Cohen, 413 F.2d 5 (3d Cir. 1969); Lewis v. Gardner, 396 F.2d 436 (6th Cir. 1968). Therefore, plaintiff must establish that he was under a disability as defined by the Social Security Act, 42 U.S.C. § 416(i)(1), on or before June 30, 1969, the last date on which he met the special insured status requirement of the Act.

Dillon v. Celebrezze, 345 F.2d 753, 755 (4th Cir. 1965); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

Plaintiff, who was born on August 18, 1912, claimed disability from December 1964 due to diabetes, and lung and heart conditions. The record indicates that his occupational history includes employment as a coal miner, laborer in a steel mill, owner and operator of an ice cream parlor, real estate salesman, and office manager of a contracting firm. His most recent employment was as owner and operator of a tavern. He gave that up in December 1964 because of his impairments.

Plaintiff's private physician, an osteopathic general practitioner, submitted reports showing that he had treated plaintiff since 1942. In his report, the doctor stated:

"Regardless of tests I have seen this man on slight exertion have great difficulty in breathing. His energy does not carry him past midday. A strenuous laugh will cause a fit of coughing. For him to participate in gainful employment of any activity would be an impossibility." (Transcript, page 77)

A second doctor, a radiologist, submitted three reports of x-ray examinations made in 1964, 1967 and 1968, when plaintiff complained of a cough and of chest pains. Such x-rays revealed that the bronchovascular pattern of the lungs was somewhat coarsened, suggesting either a fairly severe tracheobronchitis or less likely, cardiac failure. The heart was not enlarged, and there were no signs of tuberculosis, pneumonia, or lung tumor. The summary of the most recent x-ray, in 1968, was pleural thickening, but otherwise the chest was normal. (Transcript, page 78)

On November 21, 1967, plaintiff was admitted to Chestnut Hill Hospital with complaints of abdominal pain. His history showed a gastric ulcer ten years earlier, which had healed with diet and medication. A gastroenterological consultation in the hospital and x-rays revealed a large gastric ulcer. Also, a urinalysis revealed sugar in the urine, thereby establishing a diagnosis of diabetes. (Transcript, page 85) An electrocardiogram disclosed improvement in T waves in the anterolateral wall since a previously made record in October 1966. While in the hospital he was given alkalai and frequent feedings of milk, crackers and a bland diet. He was also given a weight reduction program for his diabetes. By the time of his discharge on December 10, 1967, there was a remarkable reduction in the size of the ulcer so that it was barely visible. It was also noted that weight loss had tended to control his diabetes. The diagnoses on discharge were gastric ulcer, lesser curvature, benign; diabetes mellitus; diffuse pulmonary fibrosis; and arteriosclerotic heart disease with myocardial damage.

Plaintiff was examined at government expense on October 19, 1970, by an internist specializing in cardiovascular diseases. After extensive tests this specialist summarized his impressions as follows:

"Mr. Valenti has a long history of symptoms which are suggestive of ischemic heart disease and his electrocardiogram suggests the presence of myocardial ischemia, however, a master-two step tolerance test was negative. Despite the presence of ischemic heart disease he has had no significant chest pain in the last year, does not use nitroglycerin and is not markedly limited in his activity and I feel, therefore, that the prognosis relative to his cardiovascular status is quite good in that he has had over 12 years of disease without any significant acute events or recent chest pain. He would be classified New York Heart Association 2B.[3]

---

3. Under this classification, a class 2 heart entails a slight limitation of physical activity and a class B therapeutic category indicates that the claimant may not engage in strenuous activity but may engage in ordinary activity without restriction.

His diabetes mellitus is well controlled on . . . Diabinese 250 mgm daily. "He has not had any episodes of hypoglycema or acidosis, but there are, however, ominous changes in the peripheral arterial tree with the absence of arterial pulsations below the femoral arteries. Despite the fact that his optic fundi show no vascular changes it is felt that he has, at the present time, evidence of peripheral arteriosclerosis and his prognosis relative to the vascular integrity of the lower extremities is distinctly guarded.

"His gastric ulcers have given him no problem and in view of the six year history since any significant ulcer symptomatology it is doubtful that he will experience further difficulty if he remains on a good therapeutic program.

"The chest film findings are consistent with chronic pulmonary emphysema, however, there is no distinct roentgenographic evidence of silicosis at the present time.

"The lack of limitation of activity and the normal blood gas studies and absence of wheezing, hemoptysis or serious cough indicate that his pulmonary disease is probably chronic and static with very little progression in the last few years." (Transcript, pages 89–90)

The hearing examiner also had the benefit of the testimony of a vocational expert, who testified at the hearing. Taking into consideration the claimant's age, education, previous vocational experience and impairments, and based on the assumption that he could do work seated involving the use of his hands, this expert gave his opinion as to the claimant's ability to engage in any type of work. Among the jobs he suggested were clerical work, cashiering, bookkeeping, inside sales clerk, assistant in a restaurant, phone solicitations, and an estimator in the real estate field. He testified that these jobs are of a light or sedentary type and are commonly available in the local economy as well as in most communities in the country. (Transcript, pages 41–44)

██ If an insured individual suffers from an impairment which precludes heavy work, but it is shown that he can engage in other light forms of substantial gainful activity, a "disability" within the meaning of the Act has not been established. Brown v. Finch, 429 F.2d 80 (5th Cir. 1970); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970); Calpin v. Finch, 316 F.Supp. 17 (W.D.Pa.1970).

Under the 1967 Amendment to the Social Security Act, a claimant is eligible for disability benefits

" . . . only if his . . . impairments are of such severity that he . . . cannot, considering his age, education and work experience, engage in any . . . kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

Commenting upon this statutory language, the Court of Appeals for the Third Circuit stated, in Woods v. Finch, 428 F.2d 469, 470 (1970):

"While this court has stated that this restrictive language imposes a 'very harsh' burden upon applicants for disability benefits, it is clear we are bound by its wording. Gentile v. Finch, 423 F.2d 244, 248 (3d Cir. 1970)."

██ The hearing examiner had before him the testimony of a vocational expert who testified that there are numerous light or sedentary types of work available to a person with plaintiff's qualifications and limitations. This testimony and the medical evidence which

was before the examiner furnishes substantial support for the examiner's findings and the Secretary's denial of benefits, based on those findings, may not be overturned.