Ambrosio DAVILA

v.

Caspar W. WEINBERGER.

Civ. A. No. 74–1831.

United States District Court,
E. D. Pennsylvania.

Jan. 30, 1976.

Andrew F. Erba, Community Legal Services Inc., Philadelphia, Pa., for plaintiff.

William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

■ This action is brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying the claimant disability benefits. The decision rendered by the Administrative Law Judge on March 1, 1974 became the final decision of the Secretary in this case when affirmed by the Appeals Council on April 5, 1974. This final decision holds that the claimant is not entitled to disability insurance benefits under §§ 216(i) and 223, respectively, of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. This matter is before us on cross-motions of the parties for summary judgment. In the alternative, the claimant has requested that the record of this case be remanded to the Secretary.

Title 42 U.S.C. § 405(g) provides in pertinent part that:

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

Thus, in reviewing the Secretary's decision, the Court's role is narrowly circumscribed. The sole question is whether there was substantial evidence in the record as a whole to support the finding of the Secretary that the claimant was not entitled to receive disability insurance benefits. "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971); *Barats v. Weinberger*, 383 F.Supp. 276, 279 (E.D.Pa. 1974). As our Third Circuit has recently cautioned, " 'substantial' means just that

and is not the equivalent of a 'scintilla.' " *Hess v. Secretary of HEW*, 497 F.2d 837 (3d Cir. 1974). After a careful review of the record and briefs, and for the reasons which shall appear hereinafter, this Court is of the opinion that this case must be remanded to the Secretary for a *de novo* hearing in accordance with this opinion.

To qualify for disability insurance benefits under Sections 223 and 216(i) of the Social Security Act, 42 U.S.C. §§ 423, 416(i), an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and be under a "disability" as defined in the Act. The term "disability" is defined in Section 223 as:

(d)(1) . . .

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

(B) . . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

741

(B) . . ..

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

 The claimant has the burden of establishing that he was disabled, within the meaning of the Social Security Act, *Robles v. Finch*, 409 F.2d 84 (1st Cir. 1969); *Mark v. Celebrezze*, 348 F.2d 289 (9th Cir. 1965). In order to establish a disability, a claimant must prove: first, that he has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months and; second, that the impairment renders him unable to engage in any substantial gainful employment. *Baker v. Gardner*, 362 F.2d 864 (3d Cir. 1966); *Bujnovsky v. Celebrezze*, 343 F.2d 868 (3d Cir. 1965).

 In determining whether a person is able to engage in any substantial gainful employment, there are four elements of proof which the Secretary must consider: (1) objective medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) claimant's age, educational background and work history. *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Dillon v. Celebrezze*, 345 F.2d 753 (4th Cir. 1965); *Barats v. Weinberger*, 383 F.Supp. 276 (E.D.Pa.1974); *Valenti v. Secretary of Health, Education and Welfare*, 350 F.Supp. 1027 (E.D.Pa.1972). The claimant must also establish that he became "disabled" prior to the expiration of his insured status. The commencement of a disability after the expiration of the period of insured eligibility, even if the impairment had its genesis prior thereto, does not entitle the claimant to disabili-

ty. *Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Domozik v. Cohen*, 413 F.2d 5 (3d Cir. 1969); *Gardner v. Richardson*, 383 F.Supp. 1 (E.D.Pa.1974); *Valenti v. Secretary of HEW*, 350 F.Supp. 1027 (E.D.Pa.1972). Therefore, in this case, the claimant must establish that he was under a disability as defined by the Social Security Act, 42 U.S.C. § 416(i), on or before December 31, 1971, the last date on which he met the insured status requirement of the Act. With these legal standards in mind, the record will be summarized.

The findings of the Administrative Law Judge were a product of a hearing held February 8, 1974 in Philadelphia, Pa. At that hearing it was adduced that claimant was fifty-six years old, born in Puerto Rico, and attended school through the fourth grade. He is illiterate in Spanish and cannot speak or read English.[1] He has a long work history of unskilled agricultural labor, both in Puerto Rico and the United States. He first worked in Puerto Rico digging irrigation ditches in the sugar cane fields. He came to the United States about 1949 and worked on farms picking tomatoes, cabbage, spinach and asparagus. Claimant moved to the city where he worked in a car wash and later operated a metal cutting machine in a steel mill. His last job was in 1962 as a janitor in a lamp factory, where he cleaned up and emptied trash.

At the hearing claimant gave testimony as to his symptomology and pain. (N.T. 32–39). He testified that he experiences great pain and swelling from an arthritis condition for which he takes medication. This condition prevents him from standing for any length of time, from getting out of bed, from attending to household chores and from going out.

Claimant was not represented by an attorney at the hearing. However, a neighbor of claimant appeared as claimant's representative.[2] Claimant testified,

---

1. The Administrative Law Judge arranged for an interpreter to assist the proceedings.

2. The record shows that this representative, Mr. Carlos Luna, had little or no knowledge of the pertinent regulations. Mr. Luna asked

only two questions on behalf of the claimant. When given the opportunity to question the vocational expert, Mr. Luna asked "Do you think he [Davila] will be happier in Puerto Rico?" (N.T. 51).

through Mr. Luna, that he has nightly attacks which cause him to fall out of his bed and render him unconscious. Claimant was unable to identify a pen held five feet away by the vocational expert and testified that he could not hold dishes in his hands.

Records from Temple University Hospital include a description of claimant's visit of December 28, 1965 to the accident dispensary. A long history of heavy alcohol intake is noted in the records; alcoholic gastritis, alcoholic withdrawal and anxiety were diagnosed. Medical clinic followup on January 14, 1966 reveals an elevated blood pressure, poor vision of the right eye; sinus tachycardia and distant heart sounds; old clavicle fracture healed with deformity; and paralysis of several joints of the left hand. An examination at Temple dated January 21, 1966 reveals that there were scattered lung wheezes and rhonchi and that claimant's trembling was improved with the absence of alcohol. Claimant was hospitalized at Temple from April 21st to May 11, 1966, where a physician noted the multiplicity of claimant's complaints and the questionable objective signs, but concluded that claimant was suffering from mild dementia, a lower arm paralysis, a visual deficit and a diffuse polyneuropathy. Claimant was seen again at Temple on May 22, 1966 in the medical clinic following a fall at home. He was treated for an abrasion and hematoma of the forehead. There were two followup examinations at Temple in June 1966. A surgical clinic record entry at Temple dated May 18, 1967 shows treatment for burns on the abdomen, left arm and hand.

A Wills Eye Hospital summary shows hospitalization from June 2nd to June 9, 1971 after claimant's right eye was injured during a robbery.

A report dated September 8, 1972 prepared by Dr. Frank Sharps, a general practitioner, sets forth a diagnosis of arthritis, duodenitis, and a nervous condition. Dr. Sharps' report also included findings of tenderness about the knees and ankles with painful joint motion and intermittent ankle swelling and upper abdominal tenderness. His report further stated that x-rays taken in May 1958 suggest a duodenitis and arthritis in the right knee.

A report from St. Luke's Hospital dated September 11, 1972, shows that in June of 1971 claimant was treated for a vitreous hemorrhage of the left eye and that he was seen in the clinic on January 5th and March 29, 1972, at which time there was a diagnosis of arthritis with complaints of shortness of breath and chest pain noted.

At the request of the Social Security Administration, ·Dr. Sidney N. Zubrow, an internist, examined claimant on October 27, 1972. He diagnosed essential hypertension and a sclerotic right eye and commented on the presence of diabetes. At the request of the Social Security Administration claimant was examined by Dr. Richard A. Davis, a neurosurgeon, on February 15, 1973. His report states that claimant has seizures, "the eitology (sic) of which we are not sure, but they are probably alcoholic." (N.T. 133).

Based on the testimony adduced at the hearing and the exhibits in the record, the Administrative Law Judge found as follows:

Although the claimant has multiple complaints, the examinations by an internist (Dr. Sidney N. Zubrow), a neurosurgeon (Dr. Richard A. Davis), and an ophthalmologist (Dr. William C. Frayer) failed to disclose impairments of such severity as to preclude him from engaging in any form of occupational activity. (Exhibits 18, 19 and 23). Hypertension was noted by Drs. Zubrow and Davis, but the condition has not resulted in such manifestations of severity as damage in the eyes, heart, brain or kidneys. The claimant, as well as Dr. Zubrow, referred to the presence of diabetes, but it has been pointed out that its existence is questionable (Exhibit 22), and, at any rate, the disorder has not caused such complications as ascites, neuropathy or retinopathy. While the claimant has

only slight vision in the right eye, his left eye is correctable to 20/40.

The claimant has alleged being subject to epileptic seizures, but the examination of Dr. Davis failed to substantiate this disorder (Exhibit 19). While he complained of arthritis and the presence of this condition was reported by Dr. Frank Sharps, a general practitioner (Exhibit 16), it is significant that the disorder was not serious enough to be noted by either Dr. Zubrow or Dr. Davis. In any event, the record does not establish that the arthritic condition has resulted in any substantial limitation of motion. Dr. Sharps also referred to duodenitis and a nervous condition, but the medical evidence does not establish these to be seriously disabling disorders.

The claimant is 54 years of age with a 4th grade education. He was born in Puerto Rico and came to the continental United States in 1949. His occupational history included work as an agricultural laborer, as a janitor and in a steel mill and a car wash. His knowledge of English is minimal. It is recognized that the claimant would not be able to do work of a strenuous nature. However, his condition would not prevent him performing any type of work activity, and he is capable of engaging in the non-strenuous light and sedentary occupations for which a vocational expert testified that he was qualified, e. g., such occupations as display packer, heat sealer, bag maker, sweeper, linen room man, sorter, and machine tender and feeder. These jobs exist in the national economy. (N.T. 14–15).

There appears to be no question that at the time of the hearing the claimant suffered physical impairments. However, the question before the Administrative Law Judge was whether claimant was under an impairment which prevented him from engaging in substantial gainful activity on or before December 31, 1971, the last date on which the claimant last met the special earnings requirement of the Act.

This record presents a question as to whether the Administrative Law Judge gave consideration to the claimant's subjective complaints of pain. Evidence was before the Administrative Law Judge in the form of claimant's own testimony that he was unable to work because of pain. The Social Security Act requires a determination of the claimant's complaints of disabling pain. It has been held that even pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for benefits. *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971). The possibility of fabrication or exaggeration by claimants cannot be overlooked. Accordingly, when evaluating the evidence, the Secretary must give consideration to the credibility of a claimant's testimony as to pain. *D'Amba v. Weinberger,* Civil Action No. 74–3024, filed December 4, 1975 (E.D.Pa.); *Pope v. Weinberger,* 397 F.Supp. 856, filed July 25, 1975 (E.D.Pa.); *Barats v. Weinberger,* 383 F.Supp. 276 (E.D.Pa.1974); *Baith v. Weinberger,* 378 F.Supp. 596 (E.D.Pa.1974).

When Mr. Ralf Chase, the vocational expert who testified for the Social Security Administration, was asked if there were any occupations claimant could engage in, *assuming that claimant could perform work of a sedentary or light nature,* he answered in the affirmative. However, when asked if such jobs could be performed on a regular and sustained basis, *assuming that claimant's testimony accurately described his condition,* he answered, "no" and gave the following explanation:

His hand coordination in terms of degree of manipulative skill is impaired. He has difficulty grasping things that were uncoordinated actions as he held the pen as I watched his hands. And all types of secondary bench work require some coordinated movement. Also he had difficulty with his vision seeing the objects. And this would be critical even though the objects were of gross size. He would have to have

a very fine eye/hand coordination movements and as I observed him and he stated his problems, this would be difficult in terms not only [sic] accuracy of performance and qualitative aspects but he would have problems with work pace. His work performance would be uneven and inconsistent and his productive rate would be greatly impaired. Also he stated that he was always in bed and that he had some weakness and in the records it was stated he didn't sleep too well. So if he worked on a regular sustained basis over 4 to 8 hour period it might be the fatigue factor, the tired factor and he wouldn't be able to rest with any kind of frequency. He would have a difficult time in terms of his employability. (N.T. 50–51).

Q. And this answer is based on Mr. Davila's testimony?

A. Yes your honor and my observations of him.

■ The Administrative Law Judge's report makes no mention of the claimant's subjective complaints of disabling pain other than to acknowledge that such complaints were made. From this scant reference to the claimant's pain, we cannot determine whether the Administrative Law Judge disbelieved the claimant or whether he failed to recognize pain as a basis to support a claim for benefits. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1972). It is, of course, the Administrative Law Judge's prerogative to disbelieve the claimant's testimony. *Barats v. Weinberger, supra; Baith*

*v. Weinberger, supra.* If the Administrative Law Judge fails to make a finding concerning the claimant's testimony as to disabling pain, the record must be remanded so that he can do so. *Human v. Weinberger,* Civil Action No. 75–855 (E.D.Pa.), filed January 13, 1976; *Bonenberger v. Weinberger,* Civil Action No. 74–2055 (E.D.Pa.), filed October 8, 1975; *Barats v. Weinberger, supra; Baith v. Weinberger, supra.*

■ The documentary evidence admitted into the record shows two other possible avenues that should have been explored by the Administrative Law Judge.[3] Numerous medical reports indicate that plaintiff's impairments may be the result of alcoholism.[4] Dr. Davis specifically noted the presence of seizures which "are probably alcoholic." (N.T. 133). The Court of Appeals for the Fourth Circuit has held that:

[W]here chronic alcoholism alone or in combination with other causes, is shown to have resulted in a medically determinable disability, rendering gainful employment impossible, recovery of benefits under the Act ought not be barred on account of the origin of the disability.

*Lewis v. Celebrezze,* 359 F.2d 398, 400 (4th Cir. 1966). See *Cortez v. Weinberger,* Civil Action No. 74–1348, filed October 1, 1975 (E.D.Pa.). Despite Dr. Davis' report, the Administrative Law Judge did not pursue the question of claimant's alcoholism. Additionally, claimant testified that he was being treated by Dr. Mark Orlow. However, neither testimo-

**3.** Although plaintiff was not represented by counsel at the hearing, he was clearly advised of his right to have counsel present and instead chose to have Mr. Luna act as his representative. The Courts have emphasized that in this situation the record must be looked at in the light most favorable to the claimant, for without counsel ". . . a duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore . . ." the plaintiff's claim. *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir. 1972); *Arms v. Gardner,* 353 F.2d 197 (6th Cir. 1965); *Zeno v. HEW,* 331 F.Supp. 1095 (D.P.R.1970); *Staskel v. Gardner,* 274 F.Supp. 861 (E.D.Pa.1967). However, lack of representation does not re-

quire an automatic remand; clear prejudice or unfairness at the hearing level is required before it can become a basis for remand. *Hess v. Secretary of HEW,* 497 F.2d 837 (3d Cir. 1974); *Domozik v. Cohen,* 413 F.2d 5 (3d Cir. 1969); *Cunningham v. Richardson, Secretary of HEW,* 360 F.Supp. 1037 (E.D.Pa.1973).

**4.** A report from Temple University Hospital indicates that claimant has a long history of alcoholism (N.T. 96); a report of Dr. Sidney Zubrow indicates that claimant had alcohol on his breath (N.T. 122); a report of Dr. Manley, a medical consultant, said that "this unfortunate man's main disability appears to stem from drinking too much." (N.T. 138.)

ny from Dr. Orlow nor a report from him was produced. Inasmuch as his report would be more recent than any that were produced, it may be of probative value.

Remand to the Secretary for the purpose of taking additional evidence can only be had on a showing of "good cause" as required by Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). *Hess v. Secretary of HEW,* 497 F.2d 837 (3d Cir. 1974); *Sykes v. Finch,* 443 F.2d 192 (7th Cir. 1971); *Kreider v. Weinberger,* Civil Action No. 73-2739 (E.D.Pa., filed January 9, 1975); *Reardon v. Weinberger,* 387 F.Supp. 1210 (E.D.Pa., filed January 3, 1975).

As was said in *Long v. Richardson,* 334 F.Supp. 305, 306 (W.D.Va.1971), with regard to claimant's request to remand:

> Plaintiff must show to the court at least the general nature of the new evidence he wishes to introduce into the record, or the evidence itself.

Remand will not be ordered where it appears that the claimant seeks nothing more than the opportunity to produce additional and cumulative medical evidence which amounts only to a relitigation of the medical issues. As stated in *Moore v. Celebrezze,* 252 F.Supp. 593, 595 (E.D.Pa.1966), *aff'd,* 376 F.2d 850 (3d Cir. 1967);

> [T]he plaintiff may not simply relitigate the same issues . . . or else there would be no end to litigation before the administrative boards and the courts.

We find that sufficient "good cause" to remand this case for the production of new evidence has been demonstrated. In view of our finding that this case should be remanded for a consideration of plaintiff's complaints of disabling pain, we are of the opinion that the claimant's possible alcoholic disability and the report of Dr. Orlow should also be considered at a *de novo* hearing. The record will be remanded to the Secretary for a hearing *de novo* in accordance with the reasoning set forth in this opinion.