Jessie **DAVIS**, Plaintiff,

v.

Elliot **RICHARDSON**, Secretary of
Health, Education and Welfare,
Defendant.

**Civ. A. No. 71–C–147–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

July 27, 1972.

Robert T. Winston, Jr., Norton, Va.,
for plaintiff.

Birg E. Sergent, Asst. U. S. Atty.,
Roanoke, Va., for defendant.

## OPINION

WIDENER, Chief Judge.

This is an action under § 205(g) of
the Social Security Act, 42 U.S.C. §
405(g), to review a final decision of the
Secretary of Health, Education and Wel-
fare, denying claimant's application for
the establishment of a period of disabili-
ty under § 216(i) of the Act, 42 U.S.C. §
416(i), and for disability insurance ben-
efits as provided by § 223 of the Act, 42
U.S.C. § 423.

On April 2, 1970, claimant, Jessie
Davis, filed an application to establish a
period of disability and for disability in-
surance benefits, alleging that he had

been unable to work since October 10, 1969, because of shortness of breath and pneumoconiosis. The application was denied initially and upon reconsideration. Claimant's request for a hearing was granted, and the hearing examiner, by written decision dated July 20, 1971, determined that claimant was not under a disability. On October 4, 1971, the Appeals Council denied claimant's request for review of the hearing examiner's decision, thereby making it the final decision of the Secretary. Both parties have made motions for summary judgment.

The only issue before the court is whether, from the record, the Secretary's decision is supported by substantial evidence. Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If this court finds that the Secretary's decision is so supported, its inquiry must cease, and the Secretary's decision must be affirmed. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).

Davis was fifty-four years old on October 10, 1969, the date that he allegedly became disabled. He has a seventh grade education. His primary work experience has been in underground coal mines, where he has held a variety of jobs. Additionally, he has been employed as a custodian and also as a manager of a large apartment complex, where his duties included showing apartments, taking deposits, doing light repair work, and supervising maintenance employees.

Claimant testified at the hearing that his primary difficulty was his lung impairment, which has caused him problems since the 1950's and which has progressively worsened. Davis stated that his lung condition is evidenced by shortness of breath, exhaustion after slight physical exertion, and extreme susceptibility to colds, flu, and pneumonia. Claimant also stated that he had a nervous condition, which he believed was a result of his lung problem.

Since October 10, 1969, claimant has not been gainfully employed. He testified that he receives black lung benefits, as provided for under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 921, and a miner's pension.

Mrs. Lucille Davis, claimant's wife, also testifying at the hearing, corroborated her husband's testimony.

The record contains a report from Appalachian Regional Hospital, where claimant was treated by Dr. J. C. Buchanan, a boards certified internist, during the period of February 4, 1969 to October 20, 1969. Claimant was treated for a dental abscess resulting from neglected teeth. Several teeth were extracted and the abscess was cleared. After an examination in February, 1969, Dr. Buchanan thought that claimant was "qualified for any job not requiring full respiratory effort." Upon examination in October, 1969, Dr. Buchanan noted that claimant was rather short of breath. A great deal of coal dust was found in claimant's sputum. The posterior-anterior diameter of the chest was only slightly increased. Claimant's breath sounds were faint, and no rales were heard. Claimant's heartbeat was regular and no murmur was noted. Blood pressure was recorded as 170/110. Dr. Buchanan's impression was that claimant had a dental abscess, probable pneumoconiosis, and essential hypertension.

Davis was hospitalized at the Bristol Memorial Hospital from December 4, 1969 to December 9, 1969 for evaluation of his lung condition and to rule out the possibility of carcinoma and superimposed tuberculosis. Claimant was examined by Dr. W. F. Schmidt, a boards certified internist with a subspecialty in pulmonary diseases. Dr. Schmidt's report notes that a skin test for tuberculosis, administered in 1960, had been positive. The sputum showed no atypical cells on Pap. smear and was negative for tuberculosis. Bronchial washings revealed no lesions. Laboratory data was essentially negative. On discharge, the diagnosis was soft coal worker's pneu-

moconiosis, progressive massive fibrosis, GU tract infection, E. coli, and dental caries.

From February 21, 1970 to February 27, 1970, Davis was treated at Appalachian Regional Hospital by Dr. Masao Nakandakari, a general practitioner. On the day of his admission, claimant had been seen earlier because of malaise, shortness of breath, and brown phlegm. At the earlier examination, it was believed that he was suffering from pneumonitis, in addition to his pneumoconiosis. He had been given tetracycline and an expectorant. Upon reaching home he had complained of severe shortness of breath and, on his wife's insistence, he was returned by ambulance and admitted to the hospital. He was found to be in no acute distress on admission. His blood pressure was 184/100. A physical examination was within essentially normal limits. His heartbeat was regular, and no murmurs were heard. Claimant's chest was normal to percussion and ascultation. Two chest x-rays were made, and they revealed no pneumothorax, tumor formation or gross infiltration. Dr. S. M. Straughan, a boards certified radiologist, reported an impression of fibrosis, hilar pneumonitis, arteriosclerosis, and emphysema. He was given tetracycline and advised not to smoke. Under treatment, his breathing difficulty improved significantly. His pulse rate, which was slightly elevated on admission, dropped to the upper limits of normal after two days. It was also discovered that he was infested with strongyloid larvae, for which medication was prescribed. Claimant was discharged in an improved condition with a diagnosis of improved flu syndrome, pneumoconiosis, and infestation by strongyloides larvae.

Blood gas studies of claimant's pulmonary function were made on May 14, 1970 by Dr. G. L. Hamilton, a boards certified specialist in internal medicine. Values before and after exercise were found to be essentially normal.

Also, on May 14, 1970, another chest x-ray was made. Dr. T. D. Simmons, radiologist, reported an impression of pulmonary fibrosis with coalescence, compatible with the diagnosis of complicated occupational pneumoconiosis, category 3–B. It was also his impression that claimant had some emphysema, old healed granulomatous residues, and arteriosclerosis of the aorta.

The record also contains a report of ventilatory function studies made at Holston Valley Hospital, Kingsport, Tennessee, on October 13, 1970. However, the report is not accompanied by a physician's interpretation.

Subsequent to the hearing, claimant submitted a report from Dr. W. E. Apperson, a specialist in pulmonary diseases. The report shows that claimant had been examined several times by Dr. Apperson from July, 1956 to March, 1962. All of those examinations revealed many nodular densities throughout the upper portions of both lungs, and these densities had increased considerably between July, 1956 and July, 1960. In July, 1956, Dr. Apperson thought claimant's lung condition indicative of either pneumonociosis or possibly tuberculosis. In February, 1962, a skin test for tuberculosis was positive, and Dr. Apperson recommended preventative medication. At that time, Dr. Apperson did not definitely recommend that Davis leave his job at the mine, although he did suggest the possibility of some other type of work. An examination a month later, in March, 1962, did not definitely show the presence of tuberculous activity. His impression on that date was silicotic type fibrosis, third stage, possibly complicated by a previous tuberculous infection, but he noted that all sputum cultures to date had been negative.

Subsequent to the hearing, Davis was examined by Dr. J. B. McKinnon, a boards certified internist. Dr. McKinnon's report, dated April 20, 1971, indicates that claimant's lungs were resonant to percussion throughout. There

were no rales, rubs, or abnormal breath sounds. Claimant's heart was not found to be enlarged, and his heartbeat was regular. Except for a blood pressure reading of 200/110, the remainder of the physical examination was normal. A pulmonary function study was made by Dr. McKinnon's associate, Dr. C. E. Allen, a boards certified internist with a subspeciality in cardiovascular disease. The studies showed mild impairment in vital capacity, in time vital capacity, and in maximum capacity. Dr. Allen considered these results to be suggestive of decreased lung volume as might occur with pulmonary fibrosis, pleural effusion or cardiac decompensation. Dr. Allen was of the opinion that there was only minimal pulmonary obstructive disease. Dr. McKinnon believed that the studies indicated fixed pulmonary fibrosis. However, Dr. McKinnon concluded his report with the following statement:

> "I would not feel . . . that this man is totally disabled for physical activity and certainly he would be employable in occupations not requiring vigorous physical exertion, and he probably could carry out occupations requiring moderate general physical activities."

Norman E. Hankins, a vocational expert, who had examined the documentary evidence of date in the record, was present and testified at the hearing. The hearing examiner, in presenting Dr. Hankins with a hypothetical question, asked him to assume that claimant had a lung or pulmonary impairment resulting primarily from his having worked in underground coal mines, that claimant could not be expected to work in underground coal mines or in any other environment which would expose him to an appreciable degree of atmospheric contaminants, and that claimant became short of breath after strenuous exertion and, thus, could not hold a job requiring significant amounts of walking, climbing, or lifting weights in excess of ten pounds or prolonged standing or sitting.

Taking into consideration these assumptions, as well as claimant's work experience, his age, and educational experience, Dr. Hankins was of the opinion that claimant possessed the residual capacity to perform on a sustained basis several jobs which exist in significant numbers in the national economy. He described a number of essentially sedentary jobs, where the employee could either sit or stand at his option. He mentioned the jobs of inspecting, folding, and packaging disposable surgical gloves. He also thought claimant capable of performing the jobs of checker, stripper, and taxi-cab dispatcher. Checkers insert small pieces of metal into a gauge and determine whether the metal meets certain tolerance limits. Strippers separate groups of wires and remove the coverings from the tips of the wires. On the assumption that claimant also had a mild nervous impairment, Dr. Hankins believed that claimant would still be able to perform the jobs he had enumerated. Dr. Hankins testified that, in his opinion, claimant would be capable of performing the above mentioned jobs and, additionally, several assembly line jobs if it were assumed that claimant could stand and sit for long periods of time. The vocational expert stated that he did not believe that claimant could perform any of the jobs he had described if it were necessary for claimant to lie down and rest several times during the day.

■ The claimant has the burden of proving that he is under a disability as defined by the Social Security Act, 42 U.S.C. § 416. Griffey v. Cohen, 299 F. Supp. 714 (W.D.Va.1969), aff'd. 421 F. 2d 187 (4th Cir. 1970). Of course, this burden need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964). However, when the claimant proves that he is unable to engage in his former occupation, the burden shifts to the Secretary to prove that he can do some work of a substantial gainful na-

ture. Boyd v. Gardner, 377 F.2d 718, 721, n. 4 (4th Cir. 1967).

Claimant alleges that he is disabled because of pneumonociosis, shortness of breath, and nervousness.

The evidence shows that claimant's principal difficulty is his lung impairment, which has been diagnosed as fibrosis and pneumoconiosis. As claimant himself stated at the hearing, his nervousness and shortness of breath are associated with this pulmonary impairment. Numerous x-rays have shown degenerative changes in both of his lungs, and he has also been closely watched for active tuberculosis. However, active tuberculosis has never been found. In this respect, it is significant that, although claimant's lung tissue has been damaged by exposure to the dust associated with underground coal mining, tests of the actual functional ability of his lungs have not shown a severe degree of impairment. Blood gas studies made by Dr. Hamilton on May 14, 1970 showed that values before and after exercise were essentially normal. Also, ventilatory function studies made by Dr. Allen in April, 1971 revealed only a mild impairment in vital capacity, time vital capacity, and maximum breathing capacity and only minimal pulmonary obstructive disease. There is no medical report in the record concerning claimant's nervousness, and at the hearing, claimant, by his attorney, stated that he did not wish to submit any such report. Furthermore, there is nothing in the record to indicate that claimant has ever been treated for nervousness, even though he has seen numerous doctors on account of his respiratory condition.

Although claimant has not alleged disability on account of them, the medical evidence also shows that claimant has mild hypertension and mild arteriosclerosis. However, the medical records do not show that his blood pressure difficulty has resulted in any significant organic damage or that it has been necessary to administer antihypertensives. Of the numerous medical examinations claimant has had, only two doctors indicated an impression of arteriosclerosis and there is nothing to indicate that either doctor felt that the arteriosclerosis was other than very mild.

■ The Secretary does not deny that claimant does have certain medically determinable impairments. In fact, the Secretary found that Davis is unable to return to his former job in the coal mines. Of course, the mere existence of one or more impairments is not sufficient by itself to entitle a claimant to a period of disability or to disability insurance benefits. 42 U.S.C. § 423(d)(1)(A). Nor does inability to do one's previous work, by itself, constitute disability, as § 223(d)(2)(A) of the Social Security Act, 42 U.S.C. § 423(d)(2)(A) specifically provides:

"[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

However, when the hearing examiner found that Davis was unable to continue his job at the coal mine, the burden shifted to the Secretary to prove that he could do other work. *Boyd,* supra.

Three of the medical reports in the record specifically address themselves to claimant's ability to work. In early, 1962, Dr. Apperson, while not definitely recommending that claimant give up his job at the mines, suggested that claimant visit a vocational rehabilitation center concerning the possibility of other work. This report certainly implies that claimant possessed the capacity to work

at that time. Dr. Buchanan, in February, 1969, noted that claimant was "qualified for any job not requiring full respiratory effort." On April 20, 1971, Dr. McKinnon reported that claimant ". . . certainly . . . would be employable in occupations not requiring vigorous physical exertion, and he probably could carry out occupations requiring moderate general physical activities."

At the hearing, Dr. Hankins, the vocational expert, testified that if it were assumed that claimant could only engage in sedentary activities, there were a significant number of jobs that claimant was capable of performing. Dr. Hankins also was of opinion that, if claimant could also engage in light and moderate activities, he could perform a greater number of jobs. Where the claimant suffers from an impairment which precludes heavy work, or work which requires certain kinds of physical exertion, the claimant is not disabled within the meaning of the Act if it is shown that he can engage in other light forms of substantial gainful activity. Wells v. Finch, 418 F.2d 1247 (4th Cir. 1969).

Davis does receive black lung benefits and the Secretary considered that fact. But, as the basis for these benefits is different from the requirements for disability insurance benefits, the fact that claimant receives black lung benefits is not conclusive upon the Secretary. *Cf.* 42 U.S.C. § 423(d) (1) (A), (2) (A), (3), (5) and § 416(i) *with* 30 U.S.C. § 921 and 20 C.F.R. § 410.402. See also Darter v. Cohen, 299 F.Supp. 473, 476 (W.D.Va.1969); Vicars v. Gardner, 285 F.Supp. 527, 533 n. 3 (W. D.Va.1968).

From a consideration of the record, it is apparent that the Secretary's decision that claimant's impairments, whether considered singly or in combination, are not disabling is supported by substantial evidence. Accordingly, an order is this day entered consistent with this opinion.