James S. PISARCIK

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare.

Civ. A. No. 73-15.

United States District Court,
W. D. Pennsylvania.

July 26, 1973.

Swope & Swope, Ebensburg, Pa., for plaintiff.

James E. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

### OPINION AND ORDER

SNYDER, District Judge.

This is an action filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. Section 405(g), wherein the plaintiff seeks a review of the decision of the Secretary of Health, Education and Welfare denying his claim, filed on January 5, 1973, for disability insurance benefits and for a period of disability under Sections 223 and 216(i) of the Social Security Act, 42 U.S.C.A. Section 423 and Section 416(i).

Plaintiff's application was denied by initial decision of the Bureau of Disability Insurance and upon reconsideration. A request for hearing was granted and hearings were conducted, after which the Administrative Law Judge found that the plaintiff was not entitled to a period of disability and to disability insurance benefits. A request for review of the Administrative Law Judge's action was duly filed and the action of the Law Judge was affirmed. The affirmation by the Appeals Council became the final decision of the Secretary of Health, Education and Welfare.

A Complaint was duly filed in the United States District Court for the Western District of Pennsylvania pursuant to Section 205(g), *supra*. In response, defendant filed an Answer and a certified copy of the administrative transcript as required by Section 205(g), *supra*. Subsequently, defendant filed a Motion for Summary Judgment. Counsel for the respective parties have filed written briefs in support of their positions on the motion and have agreed to waive oral argument. Upon review of the administrative record, the pleadings, and the briefs of counsel, the Court is compelled to grant the Motion for Summary Judgment.

## I. DISCUSSION

The scope of judicial review is set forth in the statute as follows:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without, remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . . . ."

Under this section and under the Administrative Procedure Act, 5 U.S.C.A. Section 706:

"Our review of the hearing examiner's findings is limited to 'ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact'."

Miller v. Richardson, 457 F.2d 378 (3d Cir. 1972); Braun v. Ribicoff, 292 F.2d 354 (3d Cir. 1961); Goldman v. Folsom, 246 F.2d 776 (3d Cir. 1957).

Plaintiff claims a disability resulting from pneumoconiosis with concomitant tuberculosis infection; osteoarthritis of the mid-cervical region with nerve compression; and cervical pain. On June 25, 1971, at age 41, the plaintiff allegedly quit work as a result of a pain in his chest, back pain, tiredness and dizziness. His own doctor recommended that he quit work as a miner. On June 28, 1971 an *evaluation* was done by Dr. M. C. Williams, a specialist in internal medicine. At that time, the plaintiff stated that he was barely able to do his work in the mines. Dr. Williams performed an external pulmonary spirogram (a tracing or graph of respiratory movements) which was felt to be within normal limits. The following day an arterial blood gas analysis was performed and it was concluded that this study was within normal limits. However, chest X-rays taken on June 28, 1971 showed pneumoconiosis with coalescence of nodules. Dr. Williams' medical conclusion was then set forth as follows:

"I feel that Mr. Pisarcik's dyspena is most likely on the basis of his pneumoconiosis. There may be some emotional factors here, but I feel that his pneumoconiosis is fairly extensive. I feel that further exposure to dust should be eliminated and attempts at rehabilitation to a line of work where dust exposure would not be a hazard is indicated. I feel that the man's progress is guarded. I certainly feel that rehabilitation to a different line of work should be possible if the patient's self-motivation is sufficient."

The plaintiff claims that he has shortness of breath and dizzy spells, and is able to walk only about two blocks as the slightest bit of exertion causes him shortness of breath. In addition to the pulmonary impairment, the plaintiff

claims general dizziness and pains in the back which prevent him from stooping, climbing or bending, and that with the combination of these conditions, he is totally and permanently disabled and unable to engage in any substantial gainful employment.

The plaintiff completed seven years of preliminary schooling and upon leaving school did farm work for approximately two years and worked in the coal mines from 1947 to June 25, 1971. While in the coal mines, the plaintiff performed the jobs of hand loader, jack setter, rock duster, roof bolter, timberman, shot firer and motorman.

There is a long history connected with the plaintiff's back complaints. He had been examined by Dr. John J. Silenskey, an orthopedic surgeon, on July 23, 1964, at which time he gave a history of low back pain extending over a period of six months. He had been unsuccessfully treated in Lee Hospital by Dr. McHugh, who prescribed bed rest and traction. On Dr. Silenskey's examination of the patient, motion in the lumbosacral area was found to be good in all directions. Some tenderness was noted on the left side in the area of the sacroiliac joint and there was some hamstring tightness, especially on the left and on reaching full extension. Bilateral straight leg raising was within normal limits. An X-ray of the lumbar area revealed a narrowing at the fourth vertebral interspace.

The next report we have is that of Dr. L. F. Casale, an orthopedic surgeon, who admitted the plaintiff to the hospital on May 18, 1969, with an attack of severe low back pain radiating toward the right hip. X-rays of the lungs revealed a general appearance of pneumoconiosis and those of the lumbar spine showed a mild scoliosis. The patient was again treated with traction and bed rest, and by May 29, 1969 was discharged with no discomfort. He was to be followed up in the doctor's office and was given a discharge diagnosis of lumbar disc lesion and pneumoconiosis.

In a transmittal letter to the United Mine Workers, Dr. Casale reported he had seen the patient again on June 9, 1969, at his office, and the patient complained only of minor back pain upon arising in the morning. Back motions were normal and the patient was reported able to return to work on June 9, 1969. The patient had not been back to see the doctor by the time of the report in August, and no further treatment was indicated.

Dr. Williams examined the plaintiff on August 11, 1969 when he was complaining to the doctor about shortness of breath on exertion, an occasional cough, occasional chest pain and pain between the shoulders when lying down. He gave a history of having been hospitalized for back pain and stated that his chest X-rays showed he had a silicosis of the lungs. By way of past history, he indicated that he was on no medications at that time, but a review of the systems revealed that he had frequent low back pain and had to wear a back brace. Physical examination of the head and neck were normal. The chest was of normal contour and expansion, and the lung fields were clear to percussion and ausculation. A definite limitation was noted in the lumbar spine. The neurological examination and the remainder of the physical examination were unremarkable. The doctor's final diagnosis was pneumoconiosis due to anthracosilicosis and chronic low back strain. He could not rule out tuberculosis or tumor on the basis of the chest films, and further studies were recommended. The doctor said that although the plaintiff complained of little dyspnea and was able to work in the mines at the time, it would be his opinion that he should be considered industrially disabled as far as coal mining was concerned, *and should pursue some other line of employment.* A further study was done by Dr. Williams at Indiana Hospital between August 20 and August 24, 1969. At the time of admission, it was noted that an evaluation was necessary for the etiology of the lung lesions. It was further

noted that the patient had a chronic low back pain for which he was wearing a back brace. He also complained of some heartburn. Tuberculin and histoplasma skin tests were negative. Gastrointestinal X-rays were within normal limits. Cell studies were negative for malignancy. Final diagnosis was of pneumoconiosis due to anthracosilicosis, Category II N, silicotic nodule of right upper lung, and back pain of undetermined etiology. This concludes the medical record up to the time that the plaintiff quit work.

Dr. G. W. Hanna performed a consultative examination on September 22, 1971. Despite the previous medical history recited above, this doctor indicated there was no history of sciatic radial pain. Physical examination revealed a normal gait and no restriction of motion, nor was there evidence of paravertebral muscle spasm. Straight leg raising caused no pain in the back nor restriction of movement in the legs. All neurological tests were normal and the sensation in the lower extremities was intact. X-rays taken on September 23, 1971 of the lumbosacral spine showed no abnormality and no change as compared with films taken on July 30, 1969. In conclusion, he found no positive findings relative to the lumbar spine to substantiate the complaints of pain. He noted that the plaintiff stated he had been told by his attending physician that he had pneumoconiosis and this was the cause of his disability.

On March 29, 1973, Dr. Hanna performed a re-examination of the plaintiff and Dr. Long performed a related X-ray. The complaint was of low back pain and it was noted: "The medical evidence shows that his ability to write, grasp, carry and/or lift is not impaired to the extent that he could not meet the physical demand of his customary job as a coal miner." (Tr. 110). The doctor found no areas of tenderness, swelling or loss of motion in the region of the back and the X-rays were normal. In this examination the patient did complain *subjectively* of mild pain in the lumbosacral area. The reflexes and sensations of the lower extremities were all normal.

Under date of December 4, 1972, and *after the decision by the Administrative Law Judge,* Dr. G. W. Katter gave a report to the plaintiff's attorney which was subsequently considered by the Appeals Council. (Tr. 3). This report indicated that James Pisarcik had visited the office of Dr. Katter on November 2, 1972, complaining of hemoptysis (blood in the sputum). The doctor noted: "He has known, advanced, totally disabling coal worker's pneumoconiosis" with a possible tuberculous infection superimposed on his coal worker's pneumoconiosis. (Tr. 125). The X-ray of Dr. Katter indicated to him osteoarthritis of the mid-cervical region with bilateral narrowing of the foramina and possible nerve compression. (Tr. 125). There was no question in the doctor's mind that the plaintiff was totally and permanently disabled because of the coal worker's pneumoconiosis and the possibility of a concomitant tuberculosis infection, which had not yet been disproved. In addition, his cervical spine changes, which were probably the result of injuries incurred in the mine, were also a disabling factor.

## II. APPLICABLE LAW

The term "disability" as applicable to claims for benefits under both Section 216(i) and Section 223, *supra,* is defined in Section 223(d) as the:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *"

It is further provided that:

"an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, consid-

ering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

In order to satisfy the requirements for disability purposes, an individual must have not less than twenty quarters of coverage during the forty quarter period which ends with such quarter; and the disability must have commenced at a time when such special earnings requirements have been met. Further, it is provided that entitlement to a period of disability and disability insurance benefits begins with the first month after a period of six months during which an individual has been under disability.

■ While the plaintiff showed symptoms of pain which, considered alone, would indicate that he was precluded from engaging in any substantial gainful activity, both the medical evidence of record and the statements of the plaintiff to the various doctors of the activities which he performed subsequent to the incurrence of the pneumoconiosis provide a substantial basis from which we must conclude that the plaintiff could, in fact, engage in light and sedentary work.

It is noted that pursuant to Section 223(d)(3), the Secretary has promulgated Social Security Regulation No. 4, Section 404.1501(c), which provides that, "statements of the applicant, including his own descriptions of impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment."

■■ The plaintiff, in this case, has failed to substantiate his symptomatic complaints with medical evidence of the same. The statements made by the plaintiff himself as to his ability to carry on various functions, and his ability to, for example, dress himself without problem, the evidence of neurological adequacy, and the lack of X-ray deficiencies, are inconsistent with the testimony of the plaintiff, and were properly to be resolved by the Administrative Law Judge and not by this Court. The Federal District Court must not decide the question of credibility, for if the record as a whole substantiates equivocal but reasonable determinations, the District Court cannot make a redetermination in accordance with its own views. Moon v. Celebrezze, 340 F.2d 926, 930 (7th Cir. 1965); Calpin v. Finch, 316 F.Supp. 17 (W.D.Pa.1970).

■ The Administrative Law Judge did acknowledge in his decision that the plaintiff's pain, the apparent low back strain, and pneumoconiosis, prevented the plaintiff from engaging in his former work as a coal miner, and for that matter, in any form of work of an arduous nature. The plaintiff sustained the initial burden of proving that he could not return to his prior work, and then the burden shifted to the Secretary to demonstrate that substantial gainful work existed in the national economy in which plaintiff could engage, with his impairment.

■■ It is noted that the plaintiff had been receiving "black lung" benefits. However, the requirements for "black lung" benefits and those for social security disability benefits differ, and a finding of one is not determinative on the other. Davis v. Richardson, 345 F.Supp. 1273 (W.D.Va.1972). Under the provisions for determining total disability for "black lung" benefits (Federal Coal Mine Health and Safety Act of 1969, P.L. 91–173, 83 Stat. 791) Chapter 22 of Title 30, United States Code Annotated in Section 921, as amended by P.L. 92–303, 86 Stat. 153, 154, are contained the provisions by which a determination of total disability of a miner is established. Under this

section there is an irrebuttable presumption of total disability (Section 921 (c)(3)) due to pneumoconiosis "(A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category, A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization". Thus, a miner who meets the medical tests for irrebuttable presumption of total disability would be entitled to "black lung" benefits even though he would not meet the vocational test disability for benefits by reason of pneumoconiosis or the Section 223(d) (42 U.S.C. Section 423(d)) test by reason of pneumoconiosis for entitlement of disability insurance benefits under Title II of the Social Security Act.

The plaintiff has emphasized his alleged pain, especially to his back. However, the clinical neurological and X-ray findings reported and considered by the Administrative Law Judge were clearly a basis for a finding that the plaintiff has not substantiated any severe or intractable pain, but only an occasional mild to moderate discomfort as indicative of an old back strain. The inability of an individual to work without some pain or discomfort does not necessarily satisfy the test for disability under the Social Security Act. Emmette v. Richardson, 337 F.Supp. 362 (W.D.Va. 1971); Garboden v. Secretary of Health, Educ. & Welfare, 258 F.Supp. 370 (D. Ore.1966). The burden always remains on the plaintiff to prove that the pain is disabling. Mark v. Celebrezze, 348 F.2d 289 (9th Cir. 1965); Cf. Miller v. Richardson, 457 F.2d 378 (3d Cir. 1972). The record, further, fails to substantiate any manifestation of severe pain as seen through muscular atrophy, contracture, any discernable loss of weight, impairment of musculature or neurological changes. Therefore, there seems to be strong support for the conclusion that the medical record shows the plaintiff was not significantly restricted but retained the capacity for sustained physical activities with no significant limitations present. See Carter v. Finch, 308 F.Supp. 954 (S.D.W.Va.1969) aff'd 421 F.2d 702 (4th Cir. 1970). The weight of Dr. Katter's opinion was for the Administrative Law Judge and would certainly not be binding upon him.

A vocational expert, Mr. Karn, found a relatively large number of sedentary or light jobs existing in the economy which the plaintiff could do, and gave as examples such jobs as electrical parts assembler, inspector, hand trimmer, frame coverer and tool clerk. The expert testified that the examples cited by him were representative only of many types of work in which the claimant would have been able to engage on a full time basis. They were light and sedentary in nature and were well within the claimant's educational qualifications, and could be performed by him after only a short period of demonstration or on the job training. Further, that they existed in significant numbers in the region in which the claimant resided and in other regions of the country.

## III.  CONCLUSION

Under all the evidence in this case then, the Court must affirm the finding that the plaintiff's conditions were not such as to preclude his engaging in light and sedentary work, and that there was ample evidence on the record to sustain a finding that such work was, in fact, available to the plaintiff.

An appropriate order will be entered.