Cecil **HAMBLIN**, Plaintiff,

v.

Caspar **WEINBERGER**, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 74–6.

United States District Court,
E. D. Kentucky,
Covington Division.

Dec. 27, 1974.

Alva A. Hollon, Hazard, Ky., for plaintiff.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., for defendant.

## MEMORANDUM

SWINFORD, District Judge.

The plaintiff, Cecil Hamblin, brings this action under the provisions of 42 U.S.C. § 405(g). He seeks a review of the finding of the Secretary that he is not entitled to benefits under the Social Security Act, as amended.

On August 24, 1971, he filed an application for disability benefits alleging that he became unable to work on "8/1st not/70" because of "bad back, fractured jaw". The application was denied initially and upon reconsideration. A request for a hearing was made on May 30, 1973, and the hearing was held at Hazard, Kentucky on September 11, 1973. The plaintiff appeared with his attorney and testified on that date. Thereafter, the administrative law judge made his decision and held that Mr. Hamblin was not entitled to benefits under the Act. On November 27, 1973, the Appeals Council concluded that the decision of the administrative law judge was correct and it thus became the final decision of the Secretary. This action was timely filed on January 28, 1974.

The record is before the court on motions for summary judgment filed by the defendant and plaintiff, respectively, on August 28, 1974, and October 3, 1974. Briefs have been filed by the parties and a transcript of all proceedings relating to the plaintiff's claim was filed as a part of the defendant's answer.

The plaintiff is fifty-nine years old, divorced, the father of ten children, and, at the time of the hearings, stated that he was living with his daughter in Crescent Springs (Kenton County), Kentucky. He has a fourth grade education and has had no special training except what he learned on the job. For several years he worked for mining companies in various capacities—motor helper, drilling and hand loading coal. In 1962 he went to Hamilton, Ohio and operated a punch press in a factory. In 1965 he changed companies and operated a drill press for three years. He also testified that he did quite a bit of farm work in Perry County, Kentucky during his "active working years". (Tr. 30). From 1969 to 1970 he worked for the Illinois Bronze Company in Chicago, Illinois as a helper for a paint maker.

He quit work in 1970 because "I just couldn't take it. I just got to smothering and I just couldn't, couldn't stand to work at it." (Tr. 30). This smothering has gotten worse, but "it's been over the last ten years". (Tr. 37). He testified that he is nervous and has to lie down to relax. (Tr. 32–33). He attributed his "bad back", which has bothered him for ten years, to his work in the coal mine. His fractured jaw was the result of an automobile accident in early 1960 and he states that because of this injury he cannot have false teeth made. (Tr. 35). He takes medicine for nerves and smothering when needed but has not had the prescriptions refilled. (Tr. 46).

In April 1972, he was hospitalized and treated for urinary retention. No other surgical operations have been recommended for him by any doctor since that time. (Tr. 44). He does not help

his daughter with any of the housework. Neither does he work in the garden or mow the yard.

The plaintiff filed for black lung benefits in 1970 and his claim was turned down, but he testified that the claim was reinstated and that it was still pending on the date of the hearing in September 1973. (Tr. 39).

Dr. Yau Shun Leung, a radiologist of Paintsville, Kentucky examined the plaintiff in March of 1968. His report, at that time, showed:

> "Moderate pulmonary emphysema, chronic bronchial irritation at both bases, minimal apical calcifications, with no Evidence of activity, dorsal spine slight bone lipping and minimal pulmonary fibrosis are seen. Normal heart size and configuration are noted.
>
> Localized opacification of the right cardiophrenic angle could be due to the following conditions:
>
> 1) Inflammatory changes including pneumonitis.
>
> 2) Herniation of a piece of omentum above right disphragm.
>
> 3) Localized pleurisy cannot be excluded.
>
> Conclusion: Pulmonary emphysema and chronic bronchial irritation. Opacification of right cardiophrenic angle could be due to above described conditions."

(Tr. 103).

Dr. Charles C. Rutledge, an orthopedic surgeon, Hazard, Kentucky, examined the plaintiff on October 8, 1971. His report is as follows:

> "The claimant was found to have some localized distortion of his left jaw bone due to traumatic injury in 1963. There was no evidence of bone destruction. Examination of the claimant's back was normal for range of motion and the x-rays were negative fracture, dislocation or arthritis. Since the claimant's only functional requirements in his last job were standing, stooping, bending and kneel-

ing, it is considered that he is not under a disability at this time for performing this type of work activity. Therefore, this DIB claim is denied." (Tr. 69). See also Exhibit 12, Tr. 89–90.

Dr. Boyce E. Jones of London, Kentucky, a general practitioner with sub-specialty in pulmonary diseases, examined the plaintiff on December 13, 1971, and his diagnosis was "Pneumoconiosis 2-q". (Tr. 91).

The discharge diagnosis of Dr. J. F. Gilbert, Jr., of the Hazard (Kentucky) Clinic on April 15, 1972, is as follows:

> "1. Acute urinary retention secondary to benign prostatic hypertrophy.
>
> 2. Benign prostatic hypertrophy.
>
> 3. Arteriosclerotic cardiovascular disease." (Tr. 101).

The x-ray data at the same time showed "Mild pulmonary fibrosis and emphysema". Arrangements were made for transferral to the University of Kentucky Medical Center for definitive treatment. Exhibit 26 (Tr. 114) shows that he was discharged from the University Hospital (Lexington) on April 25, 1972, after treatment.

On June 25, 1972, Dr. Paul Van Lith, a specialist in pulmonary diseases, was of the opinion that "(P)ulmonary function studies currently performed on the claimant show that he has the capacity to engage in all forms of work activity. Since medical evidence does not establish that the claimant is precluded from engaging in his customary work, his claim is denied." (Tr. 74).

Dr. Arnold Taulbee, general practitioner of Beattyville, Kentucky, on April 24, 1973, made the following diagnosis:

> "Chronic bronchitis (with) episodes of insufficiency as manifest by smothering spells. Prob pneumoconiosis." (Tr. 96).

It was also his opinion that Mr. Hamblin "would be unable to engage in coal mining due to his smothering." (Tr. 96).

A comprehensive examination of the plaintiff by Dr. Cordell H. Williams, specialist in internal medicine, Hazard, Kentucky, was made on May 30, 1973. The following excerpts are from his report:

"CHIEF COMPLAINT: Coughing, smothering and chest pain. He had an onset of shortness of breath about a year ago and this has been worse, he now coughs and smothers, has pains that shoot through his chest, can't move his arm. He has been coughing for two or three years and he takes spells at night coughing so much he can't sleep. He sometimes coughs up a little bit of sputum once in a while.

Mr. Hamblin has worked in the mines 15 years and last worked in the mines in 1960, hasn't worked any since then. Except in a factory some and he last worked at anything in the past two and a half years. He has been nervous for a long time.

He was in the hospital the 18 of June, 1964, until the 29 of June, 1964 with indigestion, nervousness, cough and substernal pain. He fractured his mandible in 1961, still has some trouble with this. Chest x-ray at this time showed fairly marked pulmonary emphysema and slight pulmonary fibrosis. I felt then he had a middle ear syndrome and pulmonary emphysema." (Tr. 97).

\* \* \* \* \* \*

"He was in the hospital from the 6 to the 15 of April, 1972, with benign prostatic hypertrophy. He was sent to University Hospital and had a TUR for benign prostatic hypertrophy. Chest x-ray on the 6 of April, 1972, copy is enclosed. He has multiple conversion symptoms and anxiety and he is a vague and inconcise historian and describes his symptoms dramatically.

Ht. is 62″, wt. 121 lbs., blood pressure 150/100. Uncorrected vision is 20/50 O.D. and 20/70 O.S. Urine specific gravity 1.010, negative albumin, negative sugar. Head is negative. EENT:

normal. Mouth is edentulous, not compensated with dentures. Neck is supple. Thyroid gland is not enlarged. Pharynx is negative. Chest is clear and resonant without dullness, rales or dyspnea. Heart is normal in size, shape, rate and rhythm. Abdomen is soft, nontender, without organomegaly. External genitalia are normal. Extremities show no missing members or edema. Bones & joints are normal." (Tr. 98).

Dr. Williams also reported that there was no evidence of cardiovascular disease related to respiratory disease.

The findings and decision of the administrative law judge are as follows:

"1. That the claimant last met the special earnings requirements of the Act on March 31, 1972.

2. That the claimant stated he was born on December 25, 1915, and was 54 years of age at the time he allegedly became unable to work; that he is divorced and has one child under the age of 18; that he attended school through the fourth grade and had no special training.

3. That the evidence in the record fails to show that the claimant had an anatomical, physiological, or psychological condition which was demonstrated by reports of physicians that were supported by medically acceptable clinical and laboratory diagnostic procedures such as show the claimant to have been under a disability within the meaning of the Social Security Act, on or prior to March 31, 1972.

4. That the evidence does not clearly demonstrate that the claimant at any time on or prior to March 31, 1972, was unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment or combination of impairments which had lasted or can be expected to last for 12 months or end in death.

5. That the claimant was not under a disability within the meaning of the

Social Security Act, as amended, on or prior to March 31, 1972.

## DECISION

It is the decision of the Administrative Law Judge, based upon the application filed on August 24, 1971, that the claimant is not entitled to a period of disability or to disability insurance benefits under Sections 216 (i) and 223, respectively, of the Social Security Act, as amended." (Tr. 12–13).

■ The district court does not consider the evidence de novo and if the findings of the Secretary are supported by substantial evidence they are binding upon the court. Rose v. Cohen, 6 Cir., 406 F.2d 753; Walters v. Gardner, 6 Cir., 397 F.2d 89; Lewis v. Gardner, 6 Cir., 396 F.2d 436.

■ The court must conclude that the findings of the Secretary are supported by substantial evidence. While the plaintiff's chief complaints are smothering, nerves and pain in his back, if there is persuasive evidence that the asserted pain and physical impairments are not of a degree to foreclose gainful employment, the factfinder is at liberty to reject the plaintiff's claim.' Halsey v. Richardson, 6 Cir., 441 F.2d 1230, 1236 (1971).

■ Much of the medical testimony in the record is from the black lung file of the plaintiff, and relates to the condition of his lungs. As early as March of 1968, x-ray showed pulmonary emphysema and chronic bronchial irritation (Tr. 103) but he continued to be gainfully employed. In April of 1971, x-ray examination revealed a "healthy chest". Exhibit 11 (Tr. 88). Other medical evidence reveals "pneumoconiosis 2-q" and "prob(able) pneumoconiosis". On April of 1973, Dr. Taulbee was of the opinion that the plaintiff "would be unable to engage in coal min-

ing due to his smothering". However, he had not worked in the coal industry since 1962 and up until 1970, when he stopped working, he was engaged in factory work as a punch press operator, as a drill press operator and as a helper in a paint factory. The administrative law judge pointed out in his decision that

"(C)laimant's alleged symptoms are out of all proportion to the evidence and considering the paucity of any clinical evidence of significant organic or emotional impairment it does not appear that his over-all capacity has been so impaired as to preclude him from engaging in some type of substantial gainful activity such as he previously performed. The claimant has failed to make a showing of substantial disability within the meaning of the Act and therefore there is not a sufficient showing of inability to engage in substantial gainful activity on or prior to March 31, 1972." (Tr. 12).

■ His black lung claim was turned down and later reinstated. The court is not advised whether or not that claim has been decided in his favor. However, requirements for black lung benefits and those for Social Security disability benefits differ and a finding of one is not determinative on the other. Pisarcik v. Weinberger (D.C.W.D.Pa.), 363 F.Supp. 514 (1973).

■ Courts naturally have sympathy for claimants who have worked as laborers for many years and who have physical ailments which cause them discomfort at times. They have the burden, however, of proving their entitlement to benefits under the Act. Townsend v. Secretary, (D.C.E.D.Ky.), 325 F.Supp. 982, 986 (1971). See also Rose v. Cohen, 6 Cir., 406 F.2d 753 (1969); Collins v. Gardner, 6 Cir., 373 F.2d 727 (1967).

The defendant's motion for summary judgment should be sustained and an order to that effect is this day entered.