**Thelma L. BARATS**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 73-959.**

United States District Court,
E. D. Pennsylvania.

Oct. 18, 1974.

Anthony J. Mazullo, Jr., Philadelphia, Pa., for plaintiff.

Walter S. Batty, Jr., Asst. U. S. Atty., Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

This is an action under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare (the Secretary). The Secretary's decision held that, due to an improve-

ment in plaintiff's medical condition in May 1970 ending a previously compensable period of total disability, plaintiff was only entitled to payment of disability benefits from March 1968 until July 1970, and not thereafter.[1] This determination by the Administrative Law Judge, rendered on July 25, 1972, became the final decision of the Secretary when affirmed by the Appeals Council on April 2, 1973. The matter is before us on cross motions of the parties for summary judgment.

The plaintiff filed an application for a period of disability and for disability insurance benefits on January 25, 1971, alleging that she became unable to work in March 1968, at age 42, due to a back injury. In 1966, while working for R. D. Can Company in Philadelphia, plaintiff had slipped and fallen on icy ground during performance of her duties in loading a trailer. Due to the ensuing injuries, she was not able to return to her job in the can factory although she was able, in the fall of 1967, to take a part time job as a receptionist. After a short time at this job plaintiff experienced frequent back pain and poor circulation in her legs. These symptoms grew progressively worse so that by March 1968 she had almost no feeling in her legs and had to stop working. In the fall of 1968 this disability was apparently under control, and Mrs. Barats was ready to try returning to work, when she was involved in an auto accident and re-injured her back. She continued having trouble with her back and on November 6, 1969, surgery was performed during which two discs were removed and a spinal fusion was done.[2] The Secretary determined that the plaintiff was totally disabled in March 1968

and remained so until May 1970. Benefits for this period are not at issue herein. However, the plaintiff contends that she did not recover sufficiently to be able to engage in substantial gainful activity by May 12, 1970, as was determined by the Secretary.

In reviewing the Secretary's decision, the court's role is narrowly circumscribed. The sole question is whether there was substantial evidence in the record as a whole to support the finding of the Secretary that the claimant was not entitled to receive disability insurance benefits after July 1970. "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir.), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). A careful review of the record and briefs leads us to conclude that, due to the inadequacy of the record before the Administrative Law Judge, the Secretary's determination was not based on substantial evidence; therefore, the case will be remanded for further hearing.

## II. *Applicable Statutory Definitions*

To qualify for disability insurance benefits and for a period of disability under sections 223 and 216(i) of the Social Security Act, 42 U.S.C.A. §§ 423 and 416(i), an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and for a period of disability, and be under a "disability" as defined in the Act.

---

1. A claimant is entitled to receive benefits until "the third month following the month in which his disability ceases." 42 U.S.C. § 423(a)(1)(D), (c)(2).

2. On November 2, 1969, plaintiff was admitted to Holy Redeemer Hospital at which time a myelogram was performed that showed evidence of a midline disc at L4 bilaterally. There was also evidence of spon-

dylolysis secondary to degenerative disc at L5–S1 interspace. A combined procedure of discoidectomy at L4–5 and spinal fusion was carried out by Dr. Paul Lin, a neurosurgeon, and Dr. DeVincent, an orthopedic surgeon, four days later. Plaintiff's postoperative course was uneventful and on November 15th she was discharged from the hospital to be seen by Dr. Lin and Dr. DeVincent in follow-up examinations.

The term "disability" is defined in section 223 to mean:

(d) (1) . . .

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months; . . .

(B) . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) . . .

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2), an individual whose services or earnings meet such criteria shall . . . be found not to be disabled. [See also 20 CFR §§ 404.-1532–.1534.]

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

For purposes of establishing a period of disability under section 216(i) of the Social Security Act, as amended, the same disability provisions as contained in section 223(d)(1)(A), (2)(A), (3) and (5) of the Act, quoted *supra* are applied.

## III. *The Facts of Record*

Following the surgical procedures performed upon plaintiff in November 1969 (see n. 2), she was seen in followup examinations by Drs. Lin and DeVincent. Since her postoperative progress (and particularly that after May 12, 1970) is central to the outcome of the case, a more complete review of the medical and vocational evidence must be made.

Dr. Lin saw the claimant for purposes of treatment from December 8, 1969, through November 23, 1970. On December 8th, he noted that she had the same amount of back pain, and that the leg pain seemed to be less on the right side. By February 2, 1970, the back pain had improved slightly, but it was noted by Dr. Lin that he doubted plaintiff's ability ever to be able to do her usual household chores on a full-time basis. Indeed, on November 23, 1970, six months after the date on which the Secretary had determined that her disability had ceased, Dr. Lin reported that plaintiff had periodic leg pain of sciatic distribution aggravated by standing, that some signs of L5 root pain remained, and that nothing more from a surgical therapeutic point of view was thought possible.

At the hearing, reports from the orthopedic surgeon, Dr. Henry DeVincent, were also presented. For instance, on May 12, 1970, the day on which the Secretary determined that plaintiff had

ceased to be disabled, Dr. DeVincent reported that the plaintiff was "coming along quite nicely". She had some complaints over the region of the fusion area and digital palpation revealed some tenderness, but that appeared to be subcutaneous. Her range of motion was good above the fusion site. Straight leg raising was basically negative and neurologically she was within normal limits to knee and ankle jerks. At a later examination on November 24, 1970, Dr. DeVincent found that orthopedically the plaintiff complained of discomfort in the midline, but that for functional activities of every day living she was doing well. She was not wearing any garment. Furthermore, he found that she exhibited good motion above and below the fusion site and was able to stand on her heels and toes. Straight leg raising was negative and the areas of the fusion were solid.

Dr. DeVincent again examined the plaintiff on May 4, 1971. At that time, however, he reported that plaintiff had only 45 degrees of flexion at the lumbosacral spine and 0 degree of extension in the standing position. The fusion site had no point tender areas, and seemed to be stable; plaintiff was able to stand on her toes and heels, and the heel jarring test was negative as was straight leg raising. On the other hand, she showed some depression of the Achilles reflex and some diminution in the S1–L5 dermatome by pinprick on the left side. Dr. DeVincent's diagnosis was degenerative spondylosis with spondylolisthesis grade I; status post laminectomies and fusion L4 through the sacrum. The May 4, 1971 report concluded with Dr. DeVincent's agreement as to "the disability being at least a year with a re-evaluation at that time for a rehabilitation program." That rather cryptic statement (i. e., "one year" from when?) was not further explained. Further in the same report, Dr. DeVincent revealed that the claimant had been requested by her neurosurgeon not to return to work as this would aggravate her nerve condition. On examination that same day, she stated that she could not work because of pain in the left hip and leg.

Reports from Dr. Anthony G. Borden, a Board certified radiologist, were introduced at the hearing. Dr. Borden had examined Mrs. Barats in February, May and November 1970, and in May 1971. On February 6, 1970, he reported that the lumbosacral spine and pelvis revealed status following successful postero-lateral lumbosacral fusion with no evidence of complication. A 1st degree of L5 over S1 spondylolisthesis was demonstrated. Considerable narrowing of the lumbosacral disc space was seen with subchondral sclerosis and spurring along the articular aspects of L5 and S1 bodies. A spina bifida occulta of S1 segment was noted. There was evidence of 16 mm. shortening of the right lower extremity as compared to the left side in the erect position with no significant sacral tilting. On May 12, 1970, Dr. Borden reported that there was no change from previous x-rays except that the previous 16 mm. shortening of the right lower extremity was also associated with approximately 5 mm. sacral tilting to the right. X-ray studies on November 24, 1970, showed that flexion and extension studies failed to demonstrate any appreciable motion of L5 segment in relationship to the sacrum. Otherwise, there had been no change since prior examinations. A final report dated May 4, 1971, indicated the previously described successful postero-lateral lumbosacral fusion appeared to be solid with new bone formation.

Dr. Morris Rubin, a vocational expert, was present at the hearing and testified as to the plaintiff's vocational potential after having observed her at the hearing, listened to her testimony, and having reviewed the medical evidence. Dr. Rubin stated that, based on the medical evidence of record, it was his opinion that plaintiff, as of April and May 1970, and currently, had the physical ability to perform light or semi-sedentary work as an assembler, sales clerk, counter clerk, or telephone solicitor; that in these jobs she could sit or stand according to her bodily needs; that she would be limited

282

in performing any kind of heavy lifting which would involve use of her left arm; that she had sufficient finger dexterity to lift small objects. Dr. Rubin noted that none of the jobs mentioned required remaining in one position constantly. He did not, however, address the question of whether such jobs were generally available in the national economy.

The claimant appeared in person at the hearing and testified that she was unable to work because of the pain in her hips and legs, Her subjective complaints were numerous: "And I also have problems from whiplash in the neck and down both arms, my left arm is much much worse; [t]he right leg has a habit of going out from under me. . . . ; . . . it's so painful I can't stand it; . . . I am in pain all the time, I never have relief from it, I live on darvon. I have pain so bad that I actually throw up sometimes; I can't even sit very long periods of time, I'm flat on the sofa most of the afternoon. I can't walk." These subjective complaints were further documented to the extent of similar statements made to the above-mentioned physicians and included in their reports, as well as by the testimony of plaintiff's daughter at the hearing.

### IV. Discussion

■ One claiming disability insurance benefits has the burden of proving that he has a disability within the meaning of the Social Security Act. 42 U.S. C.A. §§ 416(i)(1), 423(d)(1). Reyes Robles v. Finch, 409 F.2d 84 (1st Cir. 1969); Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965). Establishing a disability is a two-step process. First, a claimant must prove that he has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. Second, a claimant must prove that the impairment renders him unable to enagage in any substantial gainful employment. Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966); Bujnovsky v. Celebrezze, 343 F.

2d 868 (3d Cir. 1965); Esposito v. Secretary of Health, Education and Welfare, 306 F.Supp. 1212 (E.D.Pa.1969). In terms relevant here, § 404.1539(a)(1) of the Social Security Regulations No. 4, 20 CFR § 404.1539(a)(1), provides that a wage earner's "disability" shall be found to have ceased when the impairment, such as established by the medical and other evidence, is no longer of such severity as to prevent him from engaging in any substantial gainful activity. It is not the burden of the Secretary to show that the plaintiff's disability has ceased; rather it is the plaintiff's burden to prove that her disability continued subsequent to May 1970.

There is no question that plaintiff has met the first part of her statutory burden, and the Administrative Law Judge did not find otherwise. There is substantial evidence to support her claim that she is suffering from a physical impairment which lasted more than 12 months as a result of the accident in 1968. The medical reports discussed supra show that the physical limitations and resulting pain may be linked to the injuries in the lower back. Thus, an impairment is demonstrable by acceptable clinical and laboratory diagnostic techniques. The Administrative Law Judge recognized that the plaintiff could not return to her former employment or otherwise engage in heavy work. But he also found that the plaintiff's condition was not so severe after May 12, 1970, that she could not engage in any substantial gainful activity and, on the contrary, he found that the plaintiff was capable of performing certain types of semi-sedentary jobs such as telephone soliciting or selling. Thus, the crucial question is whether the plaintiff has met the second part of her statutory burden—proving that the impairment has resulted in a continuing inability to engage in substantial gainful activity.

■ In determining whether a person is able to engage in any substantial gainful employment, there are four elements of proof which the Secretary must consider: (1) objective medical data and findings; (2) expert medical

opinions; (3) subjective complaints; and (4) claimant's age, educational background and work history. Dillon v. Celebrezze, 345 F.2d 753, 755 (4th Cir. 1965); Valenti v. Secretary of Health, Education and Welfare, 350 F.Supp. 1027, 1028 (E.D.Pa.1972). In Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), decided after the determination by the Administrative Law Judge in this case, the court focused upon the qualitative nature of the findings that must be made by the examiner (now Administrative Law Judge):

> In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Id.*, 500 F.2d at 312. In our view the *Baerga* standard has not been met in this case. By way of explication, we will address the four elements of proof *seriatim.*

The Administrative Law Judge's determination that the action of the Secretary in terminating the claimant's entitlement to disability insurance benefits was correct was grounded upon the May 12, 1970 orthopedic evaluation by Dr. DeVincent and the radiologist's various reports. In particular, the Administrative Law Judge relied upon Dr. DeVincent's observation that the claimant was "coming along quite nicely", his findings that the site of the operation was stable, and his notation that various tests had failed to produce negative results. He relied too upon the fact that the radiologist had found that the fusion site was stable and that there was no evidence of arthritis. He concluded as follows:

> The Hearing Examiner is of the opinion that the evidence shows the claimant to be physically able to engage in

various forms of substantial gainful activity although not of as strenuous a nature of some in which she has engaged in the past. There is no impairment of any special sense organs and no appreciable impairment of the claimant's upper extremities. The restriction on the use of the claimant's lower back and legs is partial only. There is evidence showing forms of employment which the claimant can engage in compatible with such restrictions.

Although Dr. DeVincent's report was clinically neutral, it appears to have been accorded special weight in light of its concluding statement that plaintiff was "coming along quite nicely." The May 12, 1970 report may, indeed, provide a prima facie foundation for the decision of the Secretary, but if so, it is undercut when viewed in the light of other reports and statements made by the same physician. Thus, in Dr. DeVincent's report of May 4, 1971, which was considered by the Administrative Law Judge, an observation was made as to "the disability being at least a year with a re-evaluation at that time for a rehabilitation program." Further in the same report, Dr. DeVincent, as mentioned previously, revealed that the claimant had been requested by her neurosurgeon, Dr. Lin, not to return to work as this would aggravate her nerve condition. The uncertainty is aggravated by the fact that DeVincent's reports were only in the form of narrative follow-ups which did not focus upon plaintiff's capabilities. Thus, nowhere in the medical reports do we find expert medical opinion upon the question of the effect of plaintiff's clinical impairment upon her ability to function in a work setting.

The Administrative Law Judge neither resolved the conflicting statements made by Dr. DeVincent, nor discredited those favorable to the plaintiff; hence the Administrative Law Judge's reliance upon Dr. Borden's x-ray results of May 12th becomes more significant. However, the x-ray results do not shed any light upon the plaintiff's clinical situa-

tion, as they show a healed fusion just as x-rays taken previously and those taken thereafter.

 Turning from the matter of clinical findings and x-rays to the plaintiff's subjective complaints, evidence was before the Administrative Law Judge in the form of plaintiff's own testimony, corroborated by her daughter and notations in medical records indicating that she was suffering from pain. The Social Security Act and its implementing regulations require a subjective determination of the alleged disability. Thus, "even pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for benefits." Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971); Ber v. Celebrezze, 332 F.2d 293, 299 (2d Cir. 1964). However, the possibility of fabrication or exaggeration by claimants cannot be overlooked. For this reason, in evaluating this evidence, the Secretary must give due consideration to credibility, motivation and medical evidence of impairment. Rolenaitis v. Richardson, 336 F.Supp. 1235 (E.D.Pa.1972); Lucas v. Richardson, 348 F.Supp. 1156 (D.Kan. 1972).

 There is little doubt that if Mrs. Barats' subjective complaints were accepted as true, she would be disabled within the meaning of the Social Security Act, e. g., if her pain is so severe that she is "flat on the sofa most of the afternoon." Capability to perform intermittent, sporadic or infrequent activity does not constitute ability to engage in substantial gainful activity precluding establishment of disability under the Social Security Act. Thus, although "substantial gainful employment" does not necessarily require total full-time activity for hire, it does require "a significant quantity of fairly constant physical, mental or mixed physical and mental service productive of value or benefit." Lightcap v. Celebrezze, 214 F.Supp. 209, 213 (1962). Mrs. Barats' ability to do semi-sedentary work on some days, but not with any regularity due to her pain, would not disqualify her from coverage under the Act.

 In concluding that Mrs. Barats was able to engage in substantial gainful employment, the Administrative Law Judge's report and evaluation makes no mention of her subjective or cervical complaints. From this we cannot conclude that the Judge disbelieved claimant's complaints regarding pain; he may have failed to consider them. Under the law, it is the Administrative Law Judge's prerogative to disbelieve Mrs. Barats' testimony regarding her discomfort and its extent [3] so long as his conclusion is supported by sufficient evidence. However, if he did not consider claimant's subjective complaints, the record must be remanded so that he can do so.[4] Baith v. Weinberger, 378 F.

---

3. Although pain unaccompanied by objectively observable symptoms may be so intense as to be disabling under the Social Security Act, the inability of an individual to work without some pain does not necessarily entitle him to disability benefits. Pisarcik v. Weinberger, 363 F.Supp. 514 (W.D.Pa.1973); Emmette v. Richardson, 337 F.Supp. 362 (W. D.Va.1971). For this reason, the Hearing Examiner should make findings as to the extent of plaintiff's pain and cervical complaints, remembering t'at the burden always remains on the plaintiff to prove that the pain is disabling.

4. In Baith our colleague, Judge Luongo, noted:

During the course of his opinion, the Administrative Law Judge never explicitly stated that he disbelieved Baith. However, he did summarize Baith's subjective complaints at length. (T. 14). Moreover, at one point he wrote:

"If it is accepted that claimant only gets two and a half to three hours of sleep per night and is required to be up and about as he testified, then the Vocational Expert did not believe any work existed which claimant could perform on a sustained competitive basis." (T. 18).

From this statement, it might be inferred that the Administrative Law Judge took account of Baith's complaints and disbelieved them, or (what is far less likely) that he believed Baith, but rejected the vocational expert's opinion. I am unwilling to deal in inference or speculation on an issue which is so central to Baith's

Supp. 596, 604 (E.D.Pa.1974). In this regard, the Court noted in *Baerga*:

> Furthermore, [the Administrative Law Judge] did not address himself to the testimony of plaintiff and his wife concerning plaintiff's pain, his alleged inability to dress himself or bathe, his limitations on sitting, standing, and walking, as well as other restrictions caused by his extensive hip and leg deformities. As fact finder he has the right to reject their testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all. "In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age, educational background and work experience." Mode v. Celebrezze, 359 F.2d 135, 136 (4th Cir. 1966).

*Baerga, supra,* 500 F.2d at 312. This record fails the *Baith* and *Baerga* tests on subjective complaints.

█ In evaluating the factors of age, education and prior work experience, the Administrative Law Judge had the benefit of a vocational expert, Dr. Morris Rubin, who enumerated many jobs that the plaintiff could perform assuming that she could manage work of a light and semi-sedentary nature.[5] If such finding by the Administrative Law Judge is supported by substantial evidence, plaintiff is not disabled within the meaning of the Social Security Act. Section 223(d)(2)(A) of that Act states that an individual is disabled:

. . . only if his [impairments] are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

The same section defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Section 223(d) thus places harsh limitations upon the eligibility for benefits of people whose physical ability to work is severely hampered and whose chance of obtaining employment may be negligible. *See* Choratch v. Finch, 438 F.2d 342, 343 (3rd Cir. 1971); Gentile v. Finch, 423 F.2d 244, 248 (3d Cir. 1970). We think, therefore, it is not too much to require that an administrative decision of ineligibility under the dictates of that section be supported by explicit findings of all facts that are essential to the conclusion. Choratch v. Finch, *supra.*

█ Here we find that the testimony did not establish that there existed, at any relevant time and place in the national economy, work opportunities in significant numbers such as the allegedly disabled claimant was physically competent to fill. When the claimant showed that she was disabled from engaging in her former occupation as a factory worker and/or receptionist, the burden shifted to the Secretary to come forward with proof that there were sub-

---

claim, particularly where there is no obvious basis in the record for disbelieving his testimony.

Judge Luongo remanded for further testimony and findings.

5. Dr. Rubin's testimony appears at Tr. 35. When asked what kinds of work, if any, Mrs. Barats could perform as of April 1970, Dr. Rubin stated:

Well at that time she could have done various kinds of assembly jobs which involve both sitting and standing and she could have done the accounting clerks, sales—retail, counter clerk in dry cleaners or bakeries or specialty linen shop. She could also sell retail, sell cosmetics. These are the—she could also do telephone soliciting these are some—the occupations she could have done.

stantial job opportunities in the national economy that could be occupied by persons of the claimant's background and condition.[6] If the Secretary meets his burden of coming forward, then the claimant has the overall burden of showing that her disability precludes substantial gainful work. Meneses v. Secretary of Health, Education and Welfare, 143 U.S.App.D.C. 81, 442 F.2d 803, 806 (1971); Paskowski v. Finch, 316 F.Supp. 1050, 1053 (W.D.Pa.1970); Wooley v. Gardner, 283 F.Supp. 576, 579 (E.D.Pa.1968). In this case, the testimony of Dr. Rubin, the vocational expert, fell short of the mark. A finding that jobs which plaintiff is able to perform exist in significant numbers in a specified region should be explicitly made on the record and is a prerequisite for the denial of disability benefits under the Act.[7]

■ In sum, there are three fundamental defects in the decision of the Administrative Law Judge. First, it appears that the clinical evidence is conflicting and that such conflict was never resolved by the Administrative Law Judge in his findings. Secondly, claimant's subjective complaints were not adequately considered in determining whether she remained disabled for the report fails to indicate their consideration or rejection. Specific findings with respect to claimant's allegations regarding pain are particularly needed in this case where "the record includes medical data which would not contradict, indeed, would support [Mrs. Barats'] complaints. . . ." *Baerga, su-*

*pra* at 500 F.2d 312. Finally, the testimony does not establish that jobs which the plaintiff is able to perform exist in significant numbers in the national economy.

■ As the court remarked in Hess v. Secretary of Health, Education and Welfare, 497 F.2d 837, 840 (3d Cir. 1974):

Although the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

. . . [T]hese proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act.

Fairness requires that the claimant's case be accorded a fuller record so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. Pursuant to the provisions of the Social Security Act, this case is, therefore, remanded to the Secretary with orders to take additional testimony or make additional findings regarding claimant's subjective complaints, the availability of jobs for one of her capabilities in the national economy, and so that her medical record may be clarified.

---

6. The Administrative Law Judge specifically found that the plaintiff was unable to engage in work as strenuous as in the past and that she was unable to return to her former occupations of factory worker and receptionist; hence the shifting of the burden. Indeed, Dr. Rubin testified that in order for plaintiff to be gainfully employed she would require a job where she could change positions (*i. e.*, get up and sit down) according to her bodily needs; this she could not do as a receptionist or factory worker.

7. We also find that the testimony of the vocational expert at the hearing as to the abil-

ity of the claimant to engage in substantial gainful activity was slight. Thus, it appears from the questioning of Dr. Rubin that his report was based purely on the results of the May 12th x-ray performed by Dr. Borden and plaintiff's testimony at the hearing. Nowhere in the record is it mentioned whether Dr. DeVincent's May 12th clinical findings were taken into account. Surely, fuller elucidation as to what reports were relied upon in forming his opinion as to plaintiff's capabilities would have been helpful in compiling a more complete record.