**John P. HARKIN**

v.

**Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare.**

Civ. A. No. 77–2396.

United States District Court, E. D. Pennsylvania.

May 10, 1978.

Sam S. Angell, Delaware County Legal Assistance, Chester, Pa., for plaintiff.

Michael Hepps, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action is brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare denying the claimant disability benefits. The decision rendered by the Administrative Law Judge on January 18, 1977 became the final decision of the Secretary in this case when affirmed by the Appeals Council on April 8, 1977. This final decision holds that the claimant is not entitled to disability insurance benefits under §§ 216(i) and 223, respectively, of the Social Security Act as amended 42 U.S.C. §§ 416(i) and 423 and to Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C. § 1381a. This matter is before us on cross-motions of the parties for summary judgment. In the alternative, the claimant has requested that the record of this case be remanded to the Secretary.

Title 42 U.S.C. § 405(g) provides in pertinent part that:

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

Consequently, in reviewing the Secretary's decision, this Court's role is narrowly circumscribed. The sole question is whether there was substantial evidence in the record as a whole to support the findings of the Secretary that the claimant was not entitled to receive disability insurance benefits. "Substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ginsburg v. Richardson*, 436

F.2d 1146, 1148 (3d Cir.), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971); *Barats v. Weinberger*, 383 F.Supp. 276, 279 (E.D.Pa.1974). As our own Third Circuit has cautioned, " 'substantial' means just that and is not the equivalent of a 'scintilla.' " *Hess v. Secretary of HEW*, 497 F.2d 837 (3d Cir. 1974).

After a careful review of the record and briefs, and for the reasons which shall appear hereinafter, this Court is of the opinion that the record in this case be remanded to the Secretary.

To qualify for disability insurance benefits under Sections 223 and 216(i) of the Social Security Act, 42 U.S.C. §§ 423, 416(i), an individual must meet the insured status requirements of these Sections, be under age 65, file an application for disability insurance benefits and be under a "disability", as defined by the Act. The term "disability" is defined in Section 223 as:

(d)(1) . . .

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

(B) . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual) "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

In order to qualify for Supplemental Security Income benefits on the basis of disability under Section 1602 of the Social Security Act, 42 U.S.C.A. § 1381a, an individual must file an application for SSI benefits based on disability and must be an "eligible individual" as defined in the Act.

The term "disabled individual" as used in Section 1611(a) of the Act, *supra*, is defined in Section 1614(a) of the Act, 42 U.S.C.A. § 1382c(a) in language identical to Section 223 quoted above.

The claimant has the burden of establishing that he was disabled within the meaning of the Social Security Act, § 223(d)(5), 42 U.S.C. § 423(d)(5); *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972); *Gardner v. Richardson*, 383 F.Supp. 1 (E.D. Pa.1974). In order to establish a disability, a claimant must prove, first, that he has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months, and, second, that the impairment renders him unable to engage in any substantial gainful employment, *Baker v. Gardner*, 362 F.2d 864 (3d Cir. 1966); *Bujnovsky v. Celebrezze*, 343 F.2d 868 (3d Cir. 1965); *Powell v. Richardson*, 355 F.Supp. 359 (E.D.Pa.1973).

In determining whether a person is able to engage in any substantial gainful employment, there are four elements of proof which the Secretary must consider: (1) objective medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) claimant's age, educational background and work history. Sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d)(2)(A); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Dillon v. Celebrezze*, 345 F.2d 753 (4th Cir. 1965); *Barats v. Weinberger*, 383 F.Supp. 276 (E.D.Pa.1974); *Valenti v. Secretary of HEW*, 350 F.Supp. 1027 (E.D. Pa.1972).

The claimant, John Harkin, was born in Ireland on March 31, 1929 and has the

equivalent of a fourth grade education. He worked on his father's farm in Ireland growing oats and potatoes. Since coming to this country in 1955, his primary employment has been as a floor layer installing hardwood floors. He filed his application for disability insurance benefits and Supplemental Security Income benefits (SSI) on July 8, 1975 alleging that he became unable to work in August of 1974, due to a "weakness in knees and arms." Upon denial and affirmance of the denial of the claim, claimant, represented by counsel, had a hearing before an Administrative Law Judge on December 9, 1976. The evidence adduced at the hearing showed that claimant first experienced problems with his right knee and underwent surgery at Bally-Shawnee Hospital in Ireland in 1971 or 1972. Subsequently, claimant returned to work using knee pads, still experiencing some pain. Sometime in 1971 or 1972 claimant began to experience pain in the right arm and shoulder with increasing weakness of that arm. In 1975 he was referred by his family physician to a bone specialist, Dr. Shuster, who treated claimant with cortisone injections. Claimant was not satisfied with the therapy and Dr. Shuster referred him to Dr. McManee who in turn referred claimant to Fitzgerald-Mercy Hospital for examination and x-rays.

Claimant's family physician, John J. Stanton, M.D., reported that claimant had right radial humeral bursitis and was last seen on March 31, 1975.

On June 6, 1975, claimant's elbows were x-rayed by Robert B. Funch, M.D. of Germantown Hospital's Department of Radiology. Dr. Funch concluded that both elbows were normal.

Harold Shuster, M.D., a specialist in orthopedic surgery, completed a report dated July 24, 1975 at the request of the Pennsylvania Bureau of Vocational Rehabilitation, Disability Determination Division in connection with claimant's SSI claim. Dr. Shuster diagnosed bilateral tennis elbows with treatment by injection of the left elbow on June 30, 1975.

Claimant underwent a consultative evaluation on June 7, 1976 by J. B. De Moura, M.D., a specialist in orthopedic surgery who described him as being in good general condition and in no acute distress. Dr. De Moura went on to observe that pain was present in the cervico-dorsal area; that there was an absence of movements in the cervical spine; that there was an absence of scoliosis; that there was normal cervical and lumbar lordosis; that an examination of the plaintiff's shoulders, arms and legs was within normal limits; that there was the presence of occupational callus formation in the prepatellar areas; that x-rays of the right knee were within normal limits; that x-rays of the cervical spine showed osteophyte formation in the joints at C5–C6; that other spinal segments were normal; that the diagnostic impression was of a normal right knee and osteoarthritis of the cervical spine; that the arthritis in the cervical spine was initial and conservative treatment should improve the pain in that area and in the right knee; and concluded that plaintiff should be able to lead a normal life without any limitations from a orthopedic standpoint.

Claimant was referred on June 8, 1976 to Louis Magilner, M.D., a specialist in radiology for x-ray evaluation, who reported that the right knee showed no evidence of old or recent injury, or disease, or any evidence of arthritis and that the x-ray findings of the right knee were normal. He also reported that there was excellent mobility of the cervical spine, and the vertebral bodies were of normal structure with no fractures or compression and the cervical spine showed evidence of early degenerative change posteriorly at the C5–C6 level and that the cervical spine was otherwise normal.

Claimant testified to weakness in the elbows, both arms, the shoulders, across the back of the neck, the knees and the left leg. He also testified that he is unable to lift his arms fully over his head without pain. He testified to great pain in the knees when he is getting up or sitting down; that he has trouble standing for long periods of time; and that his legs stiffen when he sits for

long periods of time. Claimant stated that he is not currently under a doctor's care and that the only medication he is taking is Bufferin three or four times a day, which gives some relief in the arms, hands and legs.

Dr. Julius A. Romanoff, a consultative vocational expert, testified at the administrative hearing that he believed that the claimant could not return to his former occupation as a floor layer; however, based on the evidence presented at the hearing, he believed that the claimant's skills could be transferred to a variety of light, sedentary skills, such as inspecting electrical components, hand packer, drill press operator, or watchman. Dr. Romanoff stated that these jobs existed in significant numbers in the area in which the claimant resides.

From the evidence, as summarized above, the Administrative Law Judge concluded:

The impairments . . . in combination, are not of sufficient severity to be disabling within the meaning of the Social Security Act . . ..

The claimant was not prevented from engaging in any substantial gainful activity for a continuous period which has lasted or can be expected to last at least 12 months.

Counsel for the claimant asserts that the rejection of the claimant's disability was against the weight of the evidence, and that the opinion of the vocational expert was rejected by the Administrative Law Judge. The vocational expert was asked to assume that the claimant had as much pain as he testified. In response to this hypothetical question, the expert stated that the claimant *may* not be able to keep up with the work output required.

The question is presented as to whether the Secretary gave consideration to claimant's subjective complaints. "Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing [claimant] satisfies the requisite burden of proof." *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971). The possibility of fabrication or exaggeration by the claimant cannot be overlooked.

Accordingly, when evaluating the evidence, the Secretary must consider the credibility of a claimant's testimony as to pain. *Barats v. Weinberger,* 383 F.Supp. 276, 284 (E.D.Pa.1974); *Baith v. Weinberger,* 378 F.Supp. 596 (E.D.Pa.1974).

The Administrative Law Judge's report in this case makes no mention of the claimant's subjective complaints of disabling pain other than to acknowledge that such complaints were made. The Administrative Law Judge did not make a specific determination concerning the claimant's testimony as to his pain. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). He may believe or disbelieve the claimant's testimony. *Barats v. Weinberger, supra; Baith v. Weinberger, supra.* If, however, he fails to make a finding concerning the claimant's testimony as to disabling pain, the record must be remanded for such a finding. *Barats v. Weinberger, supra; Baith v. Weinberger, supra.* The record in this case will, therefore, be remanded to the Secretary for specific findings with respect to the claimant's complaints of disabling pain.