Frances V. CASSEL, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of
Health and Human Services,
Defendant.

Civ. A. No. 79–C–798.

United States District Court,
D. Colorado.

July 28, 1980.

See also, D.C. 487 F.Supp. 589.

Adam M. Dalmy, Mason, Reuler & Peek,
P. C., Denver, Colo., for plaintiff.

Roland J. Brumbaugh, Asst. U. S. Atty.,
Denver, Colo., for defendant.

AMENDED MEMORANDUM
OPINION AND ORDER

CARRIGAN, District Judge.

THIS MATTER is before the Court upon
a motion by the Secretary of Health and

Human Services (HHS) to affirm her decision denying disability insurance benefits to the plaintiff, Frances Cassel.

Cassel contends that the administrative law judge (ALJ), who heard her case, abused his discretion and erred as a matter of law by failing to apply proper legal standards and by making factual determinations without considering certain evidence of her alleged disability. HHS disputes those contentions and also asserts that Cassel was not disabled before the expiration of her insurance coverage.

## I.

Disability insurance benefits may be awarded to an applicant who is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or" which may last [or has lasted] for at least twelve consecutive months. 42 U.S.C. Section 423(d)(1)(A).

Cassel asserts that the ALJ failed to apply the proper legal standard in considering her disability insurance claim. She maintains that instead of determining whether she could engage in any substantial gainful activity, the ALJ found only that she had no "significant impairment."

■ In his decision, though, the ALJ stated that the actual severity of an impairment is gauged by determining the extent of limitations upon a person's physical activity and mental functions, "and it is only through an assessment of these capacities that a meaningful decision can be made with respect to the ability to engage in substantial gainful activity." Given the explicitly stated purpose of the ALJ's assessment of Cassel's physical and mental capacities, it is apparent that his finding that she suffered from no significant impairment was equivalent to a finding that she could engage in "substantial gainful activity."

The Court concludes, therefore, that the proper legal standard, i. e., whether Cassel could engage in substantial gainful activity, was employed.

## II.

In reviewing the agency's findings of fact, the Court must determine whether HHS' decision is supported by substantial evidence. 42 U.S.C. Section 405(g). "Substantial evidence [is] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . ." *Gardner v. Bishop,* 362 F.2d 917, 919 (10th Cir. 1966).

If the agency has failed to make necessary factual determinations, a remand may be appropriate. *Harkin v. Califano,* 453 F.Supp. 29, 33 (E.D.Pa.1978). In determining whether a person can engage in substantial gainful activity, an ALJ must consider objective medical facts, diagnosis and medical opinions, subjective evidence of pain and disability and the claimant's age, educational background and employment history. *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir. 1978); *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975); *Harkin v. Califano, supra,* 453 F.Supp. at 33.

■ Cassel maintains that the ALJ ignored such evidence. To support its contention that the ALJ actually evaluated that evidence, HHS refers to the statement in his decision that "he carefully considered all the testimony . . . and . . . evidence." Although the ALJ may have considered and rejected all pertinent evidence of medical facts, diagnosis and opinion, age, educational and employment history, and subjective evidence of pain and disability, his failure to address and reject explicitly that evidence may suggest that he neglected it. 500 F.2d at 312–13. "It is incumbent upon the [ALJ] to make specific findings . . . [so] that the court may properly exercise its responsibility . . . to determine if the . . . decision is supported by substantial evidence." *Id.*

Without more specific findings on Cassel's evidence, this Court could only speculate whether substantial evidence exists to support the agency's findings of fact.

## III.

A person is insured for disability benefits if he or she has worked five of the ten years immediately preceding onset of his or her disability and had $50 or more in wages credited to social security in at least ten of the preceding twenty calendar quarters. 42 U.S.C. Sections 423(c)(1)(B)(i), 413(a)(2). A disability period runs from "the day the disability began," but only if the claimant on that day "had not less than 20 quarters of coverage during" the preceding 40 quarters. 42 U.S.C. Section 416(i)(2)(C)(i) and (i)(3)(B)(i).

"In order to be entitled to . . . disability insurance benefits," an applicant must establish that a disability existed at or prior to the time when the earnings requirements last were met. *Johnson v. Finch*, 437 F.2d 1321, 1322, n. 2 (10th Cir. 1971). The *Johnson* case comports with the general posture of other courts that "[i]f a claimant becomes disabled after he has lost insured status, his claim must be denied despite his disability." *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979). *See Dixon v. Gardner*, 406 F.2d 1035, 1036 (4th Cir. 1969); *Estep v. Weinberger*, 525 F.2d 757, 758 (6th Cir. 1975); *Steimer v. Gardner*, 395 F.2d 197, 198 (9th Cir. 1968).

None of those cases, however, addresses the factual and legal peculiarity of an impairment that originated when the claimant was insured but did not become disabling until coverage expired. That problem may be present in this case, since even HHS has acknowledged that Cassel's medical reports indicate a significant impairment within a year after her insured status terminated. Moreover, Cassel's medical records suggest a long history of back problems that may have been present during the time when she was insured.

In addressing the issue of a latent disability, other courts have concluded that even if an impairment had its genesis during a period of eligibility, disability benefits are unavailable unless the condition reached disabling dimensions before coverage expired. *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967), *cert. denied*, 389 U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487, *rehearing denied*, 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864 (1968); *Rodriguez v. Califano*, 431 F.Supp. 421, 423 (S.D.N.Y.1977); *Davila v. Weinberger*, 408 F.Supp. 738, 741 (E.D.Pa.1976); *Gibson v. Celebrezze*, 220 F.Supp. 271, 272 (E.D.Ky.1963). While those cases hold that the Social Security Act requires an impairment to attain disabling severity before the claimant's insured status ends, the reason for that conclusion is never really explained. A reading of the Act itself leaves the distinct impression that Congress did not anticipate, and thus did not contemplate, the question of latent disability.

Although the legal problems posed by progressive medical conditions have not attracted extensive discussion in the social security opinions, they have received considerable judicial attention in the workers' compensation field. Disability insurance and workers' compensation do not share precisely identical means and ends, but both possess certain purposes and similarities that make comparison profitable.[1]

Under many workers' compensation statutes, an injured worker is required to initiate proceedings within a certain time from the date of his or her injury. *See Annot.*,

---

[1] Both disability benefits and workers' compensation operate to protect workers from loss of income due to disability. *See Alaska Packers Assn. v. Industrial Accident Commission*, 294 U.S. 532, 540, 55 S.Ct. 518, 520, 79 L.Ed. 1044 (1935); *Delno v. Celebrezze*, 347 F.2d 159, 161 (9th Cir. 1965); *Watts v. Veneman*, 334 F.Supp. 482, 487 (D.C.D.C.1971), *aff'd in part, rev'd in part*, 476 F.2d 529. Social security eligibility is "premised upon a worker's having attained 'insured' status in the course of an employment 'covered' by the Act." *Richardson v. Belcher*, 404 U.S. 78, 84, 92 S.Ct. 254, 259, 30 L.Ed.2d 231, 237 (1971) (Douglas, J., dissenting). Workers' compensation, though, is an outgrowth and modification of tort law designed to satisfy a need, that tort law could not adequately serve, to compensate for work-related injuries. *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 171–72, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972). The essential difference upon occurrence of a disability, therefore, is that the Social Security Act provides insurance protection and workers' compensation acts furnish a legal remedy.

**1058**

Limitations—Contracting Disease, 11 A.L. R.2d 277, 300–11 (1950). In the case of a latent or progressive medical condition, it has been held that the date of injury, for statute of limitations purposes, is "the time when the accumulated effects culminate in a disability traceable to the latent disease as the primary cause . . . ." Fruehauf Corp. v. Workmen's Compensation Appeals Board, 68 Cal.2d 569, 68 Cal.Rptr. 164, 166, 440 P.2d 236, 238 (1968), citing, Marsh v. Industrial Accident Commission, 217 Cal. 338, 18 P.2d 933, 936 (1933). See Lively v. Consolidation Coal Co., 273 F.Supp. 357, 359–60 (E.D.Tenn.1967); City of Boulder v. Payne, 162 Colo. 345, 426 P.2d 194, 196–97 (1967). Workers' compensation, therefore, may be available even "though the seeds productive of the injury had [been] lodged . . . . long before." 217 Cal. 338, 18 P.2d 933, 936.

 As a remedial statute, the Social Security Act is "to be broadly considered and liberally applied." Stewart v. Cohen, 309 F.Supp. 949, 956 (E.D.N.Y.1970). Just as a statute of limitations, therefore, would not run on a workers' compensation claim until a disability became evident, it seems sensible that a disability (once it becomes evident) should relate back to the period of disability insurance coverage, if the disability clearly is traceable to a latent condition that existed when the person was insured. Although a disability period runs from "the day the disability began," ascertainment of that starting point in the case of a latent disability requires identification of when the underlying, but dormantly disabling, condition had its inception.

Such a conclusion is consistent with the purpose of Social Security Act disability provisions "to aid workers who, after having made a contribution to the nation's work force, are unable to continue." Coleman v. Gardner, 264 F.Supp. 714, 718 (S.D. W.Va.1967). A contrary decision would disregard the special plight of those persons who contribute to the nation's output, but who become too sick to work regularly— then grow progressively sicker, but not sick enough to obtain disability benefits until

they no longer are currently insured. See Haviland and Glomb, The Disability Insurance Benefits Program and Low Income Claimants in Appalachia, 73 W.Va.L.Rev. 109, 133–34 (1971). It would be both senseless and insensitive to find that a worker who contributes his or her share of earnings into the social security fund, and suffers a latent disability while doing so, cannot collect from that same fund merely because of the peculiar nature, evolution, or timing of the disability. As beneficiaries of a contribution rather than "hand-out" based system, disability claimants are "entitled to no less than a liberal and broad construction will allow." Rosenberg v. Richardson, 538 F.2d 487, 490 (2d Cir. 1976).

If the plaintiff can demonstrate a present disability that is clearly and directly traceable to a condition having its inception when she was covered by disability insurance, HHS should find her qualified for disability insurance benefits. In order to establish the existence of a latent disability, however, the plaintiff carries a heavy burden of establishing: (1) with a high degree of medical probability that her disabling condition had its genesis when she was covered by disability insurance; (2) that the condition was potentially disabling; (3) that the disabling capacity of the condition lay dormant and did not manifest itself during the period of her disability insurance coverage; (4) that the present disability she now claims evolved directly, naturally and exclusively from the condition that originated during the time she was insured.

### ORDER

IT IS ORDERED that this case be remanded for: (1) more specific administrative findings based upon pertinent evidence; (2) an administrative determination, within the guidelines above articulated, of whether Cassel's claimed disability actually had its genesis during a time that she was covered by disability insurance.