Jorge **ALCAIDE**
(583–58–5557), **Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. No. 82–3139CC.

United States District Court,
D. Puerto Rico.

Jan. 23, 1985.

---

Angel M. Bonnet-Rosario, Arecibo, P.R., for plaintiff.

Daniel F. López-Romo, U.S. Atty. by Wanda Rubianes-Collazo, Asst. U.S. Atty., Hato Rey, P.R., for defendant.

## REMAND ORDER

CEREZO, District Judge.

This is an action to review a final determination by the Secretary of Health and Human Services (Secretary) denying plaintiff's claim for disability benefits which is before us pursuant to section 205(g) of the Social Security Act (Act), 42 U.S.C. Section 405(g). This case was remanded on the Secretary's own motion for a second administrative hearing in view of technical problems with the recording of the first hearing. The record shows that plaintiff is a thirty-one year old male with fourteen years of education (high school and two years of college) who worked as a general maintenance man in a public housing project and before that as a shipping clerk. He alleges that he became disabled in September 1980 when he was discharged from his employment.[1] His period of disability insurance coverage ended on September 30, 1981. He initially alleged to have been suffering from a disabling mental condition, high blood pressure and tachycardia. Since the last two impairments were not shown by medical evidence to be significant, the claim has been narrowed to the mental impairment.

The mental condition appears to be an anxiety neurosis. There are two reports by two general practitioners who examined plaintiff on two or three occasions from June 1980 to August 1981 and one by an internist. These reports do not reveal any physical abnormalities except for the following observations noted or marked in the form's section for mental health: "memory defects," "disorientation," "shortness of breath," "sometimes slurred speech," "excitation," "anxiety" and "tremor." In one report plaintiff was diagnosed as suffering from a "psychoneurosis;" in the internist's

---

1. Plaintiff said in an interview, *see* TR p. 146, that he was "laid-off" from work on or about this date but that he had been suffering from his mental impairment before.

report he was diagnosed as suffering from "acute anxiety state." There are also progress notes from the Arecibo Mental Health Clinic where plaintiff was treated during the period of December 1980 to August 1981 which describe him as "logical," "coherent," "calm" and "well oriented." Aside from these clinical observations, we have claimant's own complaints to these physicians and to the Secretary in the sense that he could not sleep well, experimented fear of people, depression and auditory hallucinations. There are other psychiatric evaluations on record which describe the mental condition as one of progressive deterioration. (Dr. Sosa Roche's, examination date: October 26, 1981; Dr. Noguera's, examination date: November 24, 1981; Dr. Elias Jiménez', examination dates: April 30, 1982 to June 12, 1982.) All of these reports were based on examinations made after the period of coverage had expired although two of them are very close to it.

The administrative law judge did not believe plaintiff's subjective complaints regarding his mental state and relied on the progress notes of the Arecibo Mental Health Clinic to conclude that he did not suffer from a "severe impairment," that is, one that significantly restricted his basic work-related activities during the relevant period of time from October 1980 to September 1981. It was found that the fact that the neurosis may have deteriorated after the period of coverage expired did not alter the conclusion that there was no proof of a severe mental impairment during such insured period. The administrative law judge said in his recommended opinion that "though we realize psychiatric conditions usually do not have a sudden etiology, the facts of this case make it fair to find that on or before September 30, 1981 there was no indication of a severe impairment."

It is important to note that the initial determination was that plaintiff had a "severe impairment, not listed in the appendix," which although preventing him from performing his past relevant work, did not limit his capacity to engage in other gainful activity. In other words, the initial agency determination went through all the steps while the administrative law judge's decision stopped at the "severe impairment" level. Although this matter is not specifically mentioned, it appears that the reason for this discrepancy lies in the fact that the initial determination considered the psychiatric report of Dr. Sosa Roche while the administrative law judge did not consider it since it dealt with an examination made after the period of coverage had ended.

The issue then is whether there was substantial evidence in support of the administrative decision for the period of October 1980 through September 1981. The administrative law judge is entitled to resolve conflicts in the evidence if the resolution is based on substantial evidence in the record as a whole. *See: Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128–29 (1st Cir.1981); *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222–23 (1st Cir.1981). The resolution of the conflict in this case was based on substantial evidence: the observations of the treating physicians at the mental health clinic who, one can assume, were specialists in the treatment of mental illness and whose observations more so than those of non-specialists can reasonably be considered to be as accurate or if not more, accurate. It is also reasonable to conclude from said observations that plaintiff's mental condition did not restrict significantly his basic work-related activities. On the other hand, if the reports of the psychiatric examinations conducted after the period of coverage had ended were considered, there may be more grounds to conclude that plaintiff may have suffered from an impairment that significantly restricted his basic work-related activities during the relevant period of coverage. Plaintiff seems to suggest that the administrative law judge erred in discarding or giving little weight to this evidence which could have been useful as an insight into the development of plaintiff's mental condition.

Whether such evidence can be considered or not to establish an impairment meriting disability benefits is a question which has met varied, and sometimes discordant, approaches. The general position assumed by most courts is that a claimant has the burden of establishing that he/she suffered from a disability which existed at or prior to the time when the special earnings requirements, or insurance coverage, were last met.[2] *See: Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.1979) (per curiam) *and cases there cited; and also Koss v. Schweiker,* 582 F.Supp. 518, 522 n. 3 (S.D.N.Y.1984); *Laboy v. Richardson,* 355 F.Supp. 602, 604 (D.C.P.R.1972); *Vega v. Secretary of Health, Education and Welfare,* 321 F.Supp. 553 (D.C.P.R.1970). These cases stand for the proposition that if a claimant suffers an impairment which existed during the period of coverage but which became disabling within the meaning of the Act after the period had expired, the claimant is not entitled to benefits. *Idem.* A contrary position was taken by the Colorado District Court which considered that the cases standing for the abovementioned proposition never explained their reasoning and suggested that Congress did not anticipate the question of latent disability. *Cassel v. Harris,* 493 F.Supp. 1055, 1057 (D.Colo.1980). In *Cassel* the court drew an analogy with many worker compensation laws which in terms of statute of limitations consider the date of injury when the accumulated effects culminate in a cognizable disability, *id.* at 1058. Relying on a liberal construction and application of the Act as a remedial statute it said:

Just as a statute of limitations, therefore, would not run on workers' compensation claim until a disability became evident, it seems sensible that a disability (once it becomes evident) should relate back to the period of disability insurance coverage, if the disability clearly is traceable to a latent condition that existed when the person was insured. Although

a disability period runs from "the day the disability began," ascertainment of that starting point in the case of a latent disability requires identification of when the underlying, but dormantly disabling condition had its inception.

*Id.* Although we know of no published case where the approach urged by *Cassel* has been adopted wholeheartedly, *see: Valentine v. Schweiker,* 559 F.Supp. 644, 649 (D.Mont.1983) and, in fact, it has been expressly rejected by some courts, *see: Basinger v. Heckler,* 725 F.2d 1166, 1168 (6th Cir.1984) and *Koss* at n. 3, various courts have considered that post-coverage medical evaluations have some evidentiary value if they contribute to the overall clinical picture of the claimant's condition during the relevant period of coverage. See: *Kerner v. Celebrezze,* 340 F.2d 736 (2d Cir.1965) *cert. denied* 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99; *Selig v. Richardson,* 379 F.Supp. 594 (D.N.Y.1974). In *Basinger* the Sixth Circuit, while rejecting the applicability of the *Cassel* view in that circuit, nevertheless recognized that evidence of medical examinations made after the period of coverage had expired may be relevant if it bears "upon the severity of the claimant's condition before the expiration of his or her insured status." *Basinger* at 1169. In that case, the court concluded that even though the post-coverage date evaluations placed the disability within the insured period, they did not serve to establish the severity of the disability during that period. The court, however, decided to remand because the administrative law judge had not made any findings as to credibility of the testimony of claimant and his family—the only evidence from which the severity of plaintiff's impairment during the relevant period could be gauged.

Our Circuit has followed the general view that the disabling impairment must be proven to have been in existence during the period of coverage, *see: Sampson v. Califano,* 551 F.2d 881, 882 (1st Cir.1977).

**2.** This period of coverage is determined by a formula outlined in 42 U.S.C. Section 416(i) and the regulations, which in cases such as the instant one, is based on the period of time the individual contributed to the general fund through the deductions to his salary. The date set as the end of the period of insurance coverage has not been disputed.

However, in *Deblois v. Secretary of Health,* 686 F.2d 76 (1st Cir.1982), also a mental impairment case, the court considered that in view of the lack of any adequate medical evidence of plaintiff's mental condition during the period of coverage and the fact that the only medical evidence in the record (although of evaluations performed after the critical date) established a serious mental impairment, coupled with the problem that a claimant who may not have been in an adequate mental state appeared before the administrative agency without legal representation, the Secretary, in its duty to develop the facts, should have explored whether the experts who had examined plaintiff after the period of coverage had expired, or who may now be examining plaintiff, could express an opinion as to whether plaintiff suffered from mental illness of disabling severity during the insured period. *Id. Deblois,* however, does not alter the position that the impairment must be of a disabling severity within the period of coverage. The case only permits a claimant to resort to post-coverage evidence to shed light on his condition *during* the insured period. We thus examine the evidence in light of the *Deblois* ruling.

 Although in the present case claimant was represented by an attorney who should have made the necessary arrangements to explore the relevance of the post-termination date medical evidence, the record is not clear whether the administrative law judge considered the impact of said evidence as required by *Deblois.* Social security administrative proceedings are not adversatorial and reasonable efforts should be made to explore gaps in the evidence whenever possible. *Id.* Since it is uncertain whether these post-termination evaluations were considered for their evidentiary value in relation to plaintiff's condition during the period of coverage (at the early administrative stage they, apparently, were considered, although it was never indicated for what purpose), the case is hereby REMANDED with instructions to the Secretary to inquire whether the psychiatrists and/or psychologists who exam-

ined plaintiff after the period of coverage had expired are able to express a reasoned opinion as to his mental state during the relevant period. If such an opinion is expressed, the Secretary must evaluate it together with all the other evidence at hand and conclude whether plaintiff was suffering from an impairment that significantly restricted his basic work-related activities. If so found, he shall determine whether said impairment was listed in the appendix or prevented him from conducting his past relevant work or prevented him from engaging in any type of substantial gainful activity in the economy.

SO ORDERED.